PEOPLE ex rel. MARSHALL v. MOORE, County Sheriff.   (No. 59–38.)

(Supreme Court, Appellate Division, Third Department.   May 5, 1915.)

1. EXTRADITION &⫸36—INTERSTATE EXTRADITION—WARRANT OF ARREST.
    A warrant of arrest issued by the Governor pursuant to a requisition from the Governor of another state was sufficient prima facie to justify the arrest of the person named therein and his delivery to the agent of the demanding state.
    [Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 40–43; Dec. Dig. &⫸36.]

2. EXTRADITION &⫸24—INTERSTATE EXTRADITION—DUTY TO DELIVER FUGITIVES FROM JUSTICE.
    Extradition proceedings are purely constitutional and statutory, and, when the conditions prescribed by law are fulfilled, it becomes the duty of the executive of the state, to which a person has fled, to arrest the fugitive and deliver him over to the agent of the demanding state.
    [Ed. Note.—For other cases, see Extradition, Cent. Dig. § 28; Dec. Dig. &⫸24.]

3. EXTRADITION &⫸32—INTERSTATE EXTRADITION—SUFFICIENCY OF "INDICTMENT."
    Under Rev. St. U. S. § 5278 (U. S. Comp. St. 1913, § 10126), providing that when the executive authority of any state or territory demands any person, as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and delivered to

&⫸For other cases see same.topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the agent of the executive authority making the demand, the "indictment" contemplated is a written accusation of one or more persons of a crime or misdemeanor preferred to and presented upon oath by a grand jury, and the statute contemplates an indictment found in due course of procedure in the demanding state, and not necessarily a common-law indictment, nor an indictment under the statutes of the state to which the accused person has fled.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 36–38; Dec. Dig. ⊚⟶32.

For other definitions, see Words and Phrases, First and Second Series, Indictment.]

4. HABEAS CORPUS ⊚⟶85—INTERSTATE EXTRADITION—BURDEN OF PROOF.

Upon a requisition by the Governor of a state for the return of an alleged fugitive from justice, the existence of a valid indictment is manifested at least prima facie by the certificate of the Governor of such state, and it is for the accused person, on habeas corpus, to show that he is illegally held.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. ⊚⟶85.]

5. HABEAS CORPUS ⊚⟶113—APPEAL—HARMLESS ERROR.

As, on habeas corpus by a person arrested pursuant to a requisition from the Governor of another state, the certificate of such Governor was prima facie proof of the existence of a valid indictment, under the laws of that state, and as the burden was on the accused person to show that he was illegally held, he was not prejudiced by the admission of informal proof of the statutes of the demanding state, unless the parties opposing the writ were guilty of bad faith and actually deceived the court as to the law of such state.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig: §§ 102–115; Dec. Dig. ⊚⟶113.]

6. HABEAS CORPUS ⊚⟶92—SCOPE OF REVIEW.

On habeas corpus by a person sought to be extradited, the question of law whether there is an indictment duly certified by the Governor of the demanding state, and the question of fact whether the accused person has fled from that state, and is a fugitive from justice, are open to consideration.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 81, 83, 87–96; Dec. Dig. ⊚⟶92.]

7. HABEAS CORPUS ⊚⟶85—INTERSTATE EXTRADITION—PRESUMPTIONS.

On habeas corpus by a person sought to be extradited, where there is an indictment duly certified by the Governor of the demanding state, the presumption must be that the grand jury, in finding the indictment, has acted within its powers, as the law presumes that public officers performed their duties, and that their official acts are regular.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 77, 78; Dec. Dig. ⊚⟶85.]

8. EXTRADITION ⊚⟶32—INTERSTATE EXTRADITION—SUFFICIENCY OF INDICTMENT—"STEALING"—"LARCENY."

An indictment found by a Massachusets grand jury, containing a caption consisting of the name of the commonwealth, county, and court and the time of the sitting of the court, as required by the Massachusetts statutes, followed by a presentation by the jurors for the commonwealth on their oath that a person named therein, on a date specified, did steal money of the amount and value in all of $1,150 of the property of D., though not such an indictment as would be required in New York, conformed to the requirements of the statutes of Massachusetts, which provide that an indictment shall contain a plain and concise description of the act constituting the crime, or the appropriate legal term descriptive

---

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

of such act, without a detailed description thereof; that the words used in a statute to define a crime or other words conveying the same meaning may be used; that the words "stealing" and "larceny" may be used to convey the meaning of a criminal taking, obtaining, or converting of personal property with intent to defraud, or deprive the owner permanently of the use of it, including all forms of larceny, criminal embezzlement, and obtaining by criminal false pretenses; that the time and place of the commission of the crime need not be alleged, unless it is an essential element of the crime; that the allegation of time in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed before the finding of the indictment after it became a crime, and within the period of limitations, and that the name of the county and court in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed within the territorial jurisdiction of the court, and that all allegations, unless otherwise stated, shall be considered to refer to the same time and place.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 36–38; Dec. Dig. ☞32.

For other definitions, see Words and Phrases, First and Second Series, Larceny; Steal.]

9. EXTRADITION ☞32—INTERSTATE EXTRADITION—SUFFICIENCY OF INDICTMENT.

Where an indictment against a person sought to be extradited is certified by the Governor of the demanding state to be authentic, it need not show upon its face where the crime took place, or that the accused person was within the demanding state.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 36–38; Dec. Dig. ☞32.]

10. EXTRADITION ☞34—INTERSTATE EXTRADITION—PROCEEDINGS BEFORE GOVERNOR.

It was not necessary that a certified copy of the statutes of another state, under which an indictment was found, should be presented to the Governor of this state on a requisition from the Governor of the state in which the indictment was found, as the Governor could insist and presumably did insist upon the production of whatever he deemed necessary or important properly to inform him on the subject.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. §§ 35–38; Dec. Dig. ☞34.]

11. EXTRADITION ☞35—INTERSTATE EXTRADITION—LEGALITY OF ARREST.

An indictment against a person sought to be extradited, duly certified by the Governor of the demanding state, was, as matter of law, conclusive, in the absence of fraud, and afforded a perfect justification for a warrant of arrest by the Governor of this state.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 39; Dec. Dig. ☞35.]

Appeal from Special Term, Clinton County.

Habeas corpus by the People, on relation of N. Monroe Marshall, against John N. Moore, as Sheriff of the County of Clinton, N. Y. From an order dismissing the writ theretofore issued, and remanding the relator, he appeals. Affirmed.

Argued March term, 1915, before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

John E. Judge, of Plattsburgh, for appellant.
Thomas D. Lavelle and A. C. Webber, Asst. Dist. Attys., both of Boston, Mass., for respondent.

WOODWARD, J.   On the 5th day of August, 1914, the Governor of Massachusetts made a requisition upon the Governor of the state of New York for the rendition of the relator, based on an indictment for theft or larceny.   This indictment was found at Boston, Mass., on the 6th day of July, 1914, and no question is raised here that a copy of this indictment was not duly certified in harmony with the requirements of the statute.   The warrant of the Governor of this state, honoring such requisition, was made on the 6th day of August, 1914, and on the 8th day of August of that year the relator was taken into custody by the sheriff of Clinton county, the respondent herein, and on the same day, upon the relator's petition, a writ of habeas corpus and a writ of certiorari were duly granted.   The proceedings upon the return to these writs were brought on for a hearing before the justice granting the order on the 17th day of August, 1914.   On the 18th day of August, 1914, the order appealed from, dismissing the writs, was made, and on the same day the relator served and filed a notice of appeal to this court.   The questions presented by this appeal relate to the sufficiency of the indictment.

Clause 2 of section 2 of article 4 of the Constitution of the United States provides that:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

In Commonwealth of Kentucky v. Dennison, 24 How. 66, 104, 16 L. Ed. 717, it was held that this provision was not self-executing, and Congress in 1793 enacted a statute, now substantially reproduced as section 5278 of the United States Revised Statutes, reading in part as follows:

"Sec. 5278.   Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured, and to cause notice of the arrest to be given to the executive authority making such demand," etc.

[1, 2] The proceedings in this case were under this section, and the warrant issued by the Governor was sufficient prima facie to justify the arrest of the relator and his delivery to the agent of the state of Massachusetts   Hyatt v. Corkran, 188 U. S. 691, 709, 23 Sup. Ct. 456, 47 L. Ed. 657.   The proceeding is purely constitutional and statutory; the law prescribes certain conditions; and, when these are fulfilled, it becomes the duty of the executive of the state, to which the person has fled, to arrest the fugitive and to deliver him over to the agent of the demanding state.

"It follows, however," say the court in Roberts v. Reilly, 116 U. S. 80, 94, 6 Sup. Ct. 291, 299 (29 L. Ed. 544), "that whenever the executive of the state,

upon whom such a demand has been made, by virtue of his warrant, causes the arrest for delivery of a person charged as a fugitive from the justice of another state, the prisoner is held in custody only under color of authority derived from the Constitution and laws of the United States, and is entitled to invoke the judgment of the judicial tribunals, whether of the state or the United States, by the writ of habeas corpus, upon the lawfulness of his arrest and imprisonment. * * * The act of congress (Rev. Stat. § 5278) makes it the duty of the executive authority of the state, to which such person has fled, to cause the arrest of the alleged fugitive from justice, whenever the executive authority of any state demands such person as a fugitive from justice, and produces a copy of an indictment found, or affidavit made, before a magistrate of any state, charging the person demanded with having committed a crime therein, certified as authentic by the Governor or chief magistrate of the state from whence the person so charged has fled. It must appear, therefore, to the Governor of the state to whom such a demand is presented, before he can lawfully comply with it: First, that the person demanded is substantially charged with a crime against the laws of the state from whose justice he is alleged to have fled, by an indictment or an affidavit, certified as authentic by the Governor of the state making the demand; and, second, that the person demanded is a fugitive from the justice of the state the executive authority of which makes the demand. The first of these prerequisites is a question of law, and is always open, upon the face of the papers, to judicial inquiry, on an application for a discharge under a writ of habeas corpus. The second is a question of fact, which the Governor of the state upon whom the demand is made, must decide, upon such evidence as he may deem satisfactory. * * * It is conceded that the determination of the fact by the executive of the state in issuing his warrant of arrest, upon a demand made on that ground, whether the writ contains a recital of an express finding to that effect or not, must be regarded as sufficient to justify the removal until the presumption in its favor is overthrown by contrary proof. Re Reggel, 114 U. S. 642 [5 Sup. Ct. 1148, 29 L. Ed. 250]. * * * The objections taken in this proceeding to the sufficiency of the indictment, which were overruled both in the District and Circuit Courts, and which are still relied on here, are not well founded. The indictment itself is certified by the Governor of New York to be authentic and to be duly authenticated, which is all that is required by the act of Congress. It charges a crime under and against the laws of that state. It is immaterial that it does not appear that a certified copy of such laws was furnished to the Governor of Georgia. The statute does not require it, and the Governor could have insisted, and it is to be presumed did insist, upon the production of whatever he deemed necessary or important properly to inform him on the subject."

[3, 4] The above is quoted in substance by the court in Hyatt v. Corkran, 188 U. S. 691, 709, 23 Sup. Ct. 456, 47 L. Ed. 657, and seems to dispose of the contentions in this case. The indictment referred to in the federal statute is not necessarily a common-law indictment, nor yet one under the statutes of the state of New York. It is a statute of the United States, general in its application to all the states, and when it provides that "whenever the executive * * * demands any person as a fugitive from justice, * * * and produces a copy of an indictment found or affidavit made before a magistrate of any state or territory," it means an indictment found in the due course of procedure in such state or territory, and this fact is manifest, not by our conceptions of what an indictment should be, but by the certificate of the Governor of the demanding state. The indictment itself, when certified by the Governor, is the only evidence of its authenticity which the law provides for, and an indictment, in the sense in which it is used in the federal statute, is "a written accusation of one or more persons of a crime or misdemeanor, preferred to, and presented upon oath by, a

grand jury." 4 Blackstone's Commentaries, 302; 10 Ency. of Pl. & Pr. 350. Mr. Justice Field, in charging a grand jury (2 Sawy. 677, Fed. Cas. No. 18,255), described an indictment as a "formal accusation made by the grand jury, charging a party with the commission of a public offense," and, tried by these tests, there can be no reasonable question that the court below has properly disposed of the writs. The question of whether the papers are proper upon their face is a question of law, and the only question of law presented here is, not whether the indictment would be good in the state of New York, but whether there was an indictment under the laws of the state of Massachusetts, and upon that point the certificate of the Governor is made at least prima facie sufficient to justify the arrest, and it is for the relator to show that he is illegally held.

[5, 6] If this is a correct view of the law, then the relator could not have been prejudiced by the fact that the court permitted the respondent to prove somewhat informally the statute law of the state of Massachusetts, unless it is shown that the respondent was guilty of bad faith in the matter and actually deceived the court as to the law of that state, and even then it may be fairly questioned whether the certificate of the Governor, for the purposes of extradition, is not conclusive upon the question of law. There can be no question that the action of the Governor of the state of New York, upon the demand of the Governor of Massachusetts, is prima facie sufficient to justify the arrest and delivery of the person demanded. Hyatt v. Corkran, supra. The question of law may be presented on habeas corpus whether there is an indictment duly certified by the Governor of Massachusetts, and the question of fact whether the relator is a fugitive from the justice of that state is likewise open to him. Roberts v. Reilly, 116 U. S. 80, 95, 6 Sup. Ct. 291, 29 L. Ed. 544. But we fail to find any authority which justifies the courts of this state in determining upon the technical sufficiency of an indictment found and certified by the Governor of a sister state, while Moore (2 Moore on Extradition, § 638) says that:

"It is believed there is no case in which a court has on habeas corpus discharged a fugitive from custody on a rendition warrant on the ground that an indictment accompanying the rendition did not constitute or contain a sufficient charge of crime."

[7-9] Of course, where it appears without contradiction, as in the case of Hyatt v. Corkran, supra, that the defendant was not within the demanding state at any time covered by the indictment, and that he had never fled from the state, the relator is entitled to be discharged. The statute does not provide for delivering up to a demanding state one who was not within the state at the time of the alleged crime, but this is a question of fact, and not one of law. It has no relation to the question here presented, which is one of law, in which we are asked to hold that an indictment of the state of Massachusetts, duly certified by the Governor of that state, does not sufficiently charge the defendant with a crime. The indictment, it is true, is not such an indictment as would be required in the state of New York, but the statute of the United States makes no such requirement; it merely requires that

there shall be an indictment or affidavit "charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the Governor or chief magistrate," and the law presumes that public officers perform their duties, and that their official acts are regular (22 Am. & Eng. Ency. of Law, 1267; McLaughlin v. Miller, 124 N. Y. 510, 518, 26 N. E. 1104), and the presumption must be that the grand jury, in finding an indictment, has acted within its powers. The indictment in the matter now before us, duly certified by the Governor of the state of Massachusetts, reads as follows:

"Commonwealth of Massachusetts, Suffolk—ss.:

"At the Superior Court, begun and holden at the city of Boston, within and for the county of Suffolk, for the transaction of criminal business, on the first Monday of July in the year of our Lord one thousand nine hundred and fourteen. The jurors for the commonwealth of Massachusetts on their oath present that N. M. Marshall, whose Christian name is to said jurors unknown, on the twenty-eighth day of April, in the year of our Lord one thousand nine hundred and fourteen, did steal money of the amount and value in all of eleven hundred and fifty dollars, of the property of Cornelius J. Donovan.

"A true bill.

"[Signed]  Edgar A. Cook, Foreman of the Grand Jury.
"D. V. McIsaac, Assistant District Attorney.

"A true copy.

"Attest: John R. Campbell, Assistant Clerk."

Obviously this is a "written accusation of crime preferred by a grand jury upon oath," and while it does not show upon the face of the indictment where the crime took place, or that the relator was within the state of Massachusetts, the indictment itself is certified by the Governor of Massachusetts to be authentic and to be duly authenticated, which is all that is required by the act of Congress. Roberts v. Reilly, supra. Prima facie this is sufficient, and, if we look to the laws of Massachusetts (a certified copy of which is now in the possession of this court), it appears that an indictment shall contain the "caption, which shall consist of the name of the commonwealth, county, and court in which the indictment is presented, and the time of the sitting of the court," and a plain and concise description of the act which constitutes the crime, or the appropriate legal term descriptive of such act, without a detailed description thereof. The words used in a statute to define a crime, or other words conveying the same meaning may be used, and the words "stealing" and "larceny," are authorized to be used to convey the meaning of "criminal taking, obtaining, or converting of personal property, with intent to defraud or deprive the owner permanently of the use of it, including all forms of larceny, criminal embezzlement, and obtaining by criminal false pretenses." The indictment charges that the relator "did steal money of the amount and value of eleven hundred and fifty dollars of the property of Cornelius J. Donovan," which is clearly in compliance with the provisions of the statute above quoted. Then it is further provided that:

"The time, and place of the commission of the crime need not be alleged unless it is an essential element of the crime. The allegation of time in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed before the finding of the indictment, after it became a crime, and within the period of limitations. The name of the county and

court in the caption shall, unless otherwise stated, be considered as an allegation that the act was committed within the territorial jurisdiction of the court. All allegations of the indictment shall, unless otherwise stated, be considered to refer to the same time and place."

[10] It is true that it does not appear that a certified copy of these statutory provisions was presented to the Governor, but the statute does not require it. The Governor could have insisted, and it is to be presumed did insist, upon the production of whatever he deemed necessary or important properly to inform him on the subject (Roberts v. Reilly, supra), and the relator does not controvert any of the facts which the laws of Massachusetts read into an indictment. The only question before this court, on habeas corpus, is whether the relator is unlawfully deprived of his liberty; whether the Governor of the state of New York, in honoring the demand of the Governor of Massachusetts, has acted without authority of law. It is not enough for the relator to show that the indictment is defective under the laws of the state of New York; he is bound to overcome the presumption that the Governors of the two states have performed their duties under the laws of the United States. He must show, not that the indictment is open to objections in the state of New York, but that it is not in law an indictment under the laws of the state of Massachusetts, such as the certificate of the Governor of that state asserts it to be, in order to be entitled to relief as a matter of law. He is, of course, permitted to show, as a fact, that he was not within the state of Massachusetts at the time the crime is alleged to have been committed, and that he has not fled from such state, under the rule recognized in Hyatt v. Corkran, supra, but an indictment of a sovereign state, certified in the manner provided by the laws of the United States, may not be disregarded by the courts of this state for the purpose of interfering with the discharge of a duty on the part of the chief executive commanded by the Constitution and laws of the United States. It is the duty, no doubt, of the Governor, as suggested in Hyatt v. Corkran, supra, to require proof that the relator was within the demanding state at the time of the crime, and that he subsequently withdrew from her jurisdiction, but no such contention is made here; it is merely suggested that the indictment itself does not show his presence in the state. But it is to be presumed that the Governor discharged his duty; that he ascertained, by evidence satisfactory to himself, that the relator was a fugitive from the justice of the state of Massachusetts, and, so long as the relator does not show conclusively to the contrary (Hyatt v. Corkran, supra), the alleged defects in the indictment cannot be relied upon to give him relief. The law of Massachusetts has a right to define what shall constitute an indictment in that state, and the indictment relied upon by the respondent clearly conforms to the requirements of the law of that state, and, read in conjunction with the certified copies of the law now in the possession of this court, it alleges all of the matters which upon its face might seem to be lacking.

[11] This indictment, duly certified by the Governor of Massachusetts, is, as matter of law, conclusive, in the absence of fraud; it affords a perfect justification for the action of the executive of this

153 N.Y.S.—2

state, because it fully conforms to the requirements of the laws of the United States, which—

" 'are laws in the several states, and just as much binding on the citizens and courts thereof as the state laws are. The United States is not a foreign sovereignty as regards the several states, but is a concurrent and, within its jurisdiction, paramount sovereignty. * * * If an act of congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a state court. The fact that a state court derives its existence and functions from the state laws is no reason why it should not afford relief, because it is subject also to the laws of the United States, and is just as much bound to recognize these as operative within the state as it is to recognize the state laws. The two together form one system of jurisprudence, which constitutes the law of the land for the state; and the courts of the two jurisdictions are not foreign to each other, nor to be treated by each other as such, but as courts of the same country, having jurisdiction partly different and partly concurrent.' " Second Employers' Liability Cases, 223 U. S. 1, 57, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44, citing Claflin v. Houseman, 93 U. S. 130, 136, 137, 23 L. Ed. 833.

The order appealed from should be affirmed. All concur.