STATE EX REL. SIELOFF, and another, Petitioners-Appellants, v. GOLZ, Sheriff of Columbia County, Respondent. [Case No. 75–478].

STATE, Plaintiff in error, v. BROWN, Defendant in error. [Case No. 75–512].

STATE EX REL. BEAR, Petitioner-Appellant, v. KRUEGER, Sheriff of Lincoln County, Respondent. [Case No. 76–321].

*Nos. 75–478, 75–512. Submitted on briefs September 6, 1977. No. 76–321. Argued September 2, 1977.—Decided October 18, 1977.*
(Also reported in 258 N. W. 2d 700.)

226

230

232

For the appellants the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general. [Case No. 75–478.]

For the defendant in error the cause was submitted on the brief of *Howard B. Eisenberg,* state public defender.

For the plaintiff in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Michael R. Klos,* assistant attorney general. [Case No. 75–512.]

For the petitioner-appellant there were briefs and oral argument by *Howard B. Eisenberg,* state public defender.

For the respondent the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general. [Case No. 76–321.]

HEFFERNAN, J.   The resolution of each of these three appeals requires an examination of the provisions of the Uniform Criminal Extradition Act (sec. 976.03, Stats.), art. IV, sec. 2, of the United States Constitution, and 18 U.S.C., sec. 3182.

Although the factual posture of each case differs, the underlying problems of each case are controlled by the same established law and by the same rationale. Each of these cases reviews a determination of a *habeas corpus* court which inquired into the detention of a prisoner challenging an extradition warrant issued by the Governor of the State of Wisconsin.

In *State ex rel. Beth Sieloff and Lue A. Janisch* and in *State ex rel. Charles Michael Bear,* the Governor's extradition warrant was upheld and the writ of *habeas corpus* quashed.

In *State of Wisconsin v. Franklin Melvin Brown, Jr.,* the *habeas corpus* court determined that the Governor's extradition warrant was issued without a showing of probable cause and the writ of *habeas corpus* was granted.

We affirm the courts' determinations in respect to *Sieloff-Janisch* and *Bear* and reverse the determination in respect to *Brown.*

In each case we find that there was a legally sufficient basis for the issuance of the Governor's warrant and conclude that a writ of habeas corpus should not issue.

The case of *State ex rel. Beth Sieloff and Lue A. Janisch,* hereinafter referred to as *Sieloff,* originated with a demand upon the Governor of Wisconsin by the Governor of Kentucky. The demand was accompanied by a complaint-affidavit and a warrant. Upon examination of these documents and after consultation with the Attorney General's office, the Governor of Wisconsin returned the documents because the complaint-affidavit charged the defendants in the terms of the Kentucky statute which made the removal of mortgaged property a crime, but failed to recite any facts from which probable cause could be determined. Approximately a year later, a renewed demand for extradition of these defendants was made by the Governor of Kentucky. That demand was accompanied by a new affidavit, which undisputably recites facts sufficient to show probable cause. However, no new warrant was issued; and the Kentucky warrant, dated a year earlier, founded upon the affidavit which the Governor of Wisconsin found insufficient to show probable cause, is the only warrant which was transmitted to Wisconsin. The Governor of Wisconsin concluded that the later affidavit demonstrated probable cause and was sufficient to substantially charge the defendants under the laws of Kentucky. The extradition warrant was issued. He, and on review the

*habeas corpus* court, in effect, concluded that the warrant was not the charging document and whether a warrant was issued in Kentucky on the basis of the second affidavit was irrelevant to his obligations under the Uniform Criminal Extradition Act. The Public Defender asserts that the affidavit must be accompanied by the demanding state's warrant issued on the basis of the affidavit.

In the case of *State v. Brown,* Brown was charged with burglary and felonious theft in Minnesota. The demand of the Governor of Minnesota for extradition was accompanied by a complaint and warrant. The Governor of Wisconsin determined that the documents were sufficient and that the complaint was an affidavit, executed before a magistrate, that demonstrated probable cause. Accordingly, he issued the extradition warrant. On *habeas corpus,* the circuit court concluded that the affidavit upon which the Minnesota warrant was issued stated insufficient facts to show probable cause, and accordingly the writ of *habeas corpus* was issued. The Attorney General on this appeal asserts that probable cause was demonstrated by the complaint.

In the case of *Charles Michael Bear v. Krueger,* Bear was indicted by a grand jury in Texas for murder; and the demand of the Governor of Texas for the extradition of Bear was accompanied by an authenticated copy of the indictment, but no affidavit reciting probable cause was submitted to the Governor of Wisconsin. It is argued that, because a grand jury indictment under Texas law need not be founded upon probable cause, an authenticated indictment from that jurisdiction, standing alone, is insufficient to permit the Governor of Wisconsin to issue an extradition warrant. It is argued that the issuance of a warrant without a showing of probable cause violates the Fourth Amendment to the United States Constitution.

In the *Bear* case, the Public Defender also argues that the Governor cannot act to issue an extradition warrant, because he is not a neutral and detached judicial officer, but, rather, as the state's chief executive, is so closely associated with the Attorney General's office that he, in no case, can constitutionally qualify to issue an extradition warrant. While this argument was made particularly in the briefs in *Bear*, the same issue was raised peripherally in *Sieloff* and *Brown*.

The statutory underpinning for extradition of criminals from the State of Wisconsin is found in sec. 976.03, Stats., the Uniform Criminal Extradition Act. The formal and procedural requisites of extradition are set forth in sec. 976.03 (3) :

"976.03 Uniform criminal extradition act.

"(3) Form of Demand. No demand for the extradition of a person charged with crime in another state shall be recognized by the governor unless in writing alleging . . . that the accused was present in the demanding state at the time of the commission of the alleged crime, and that thereafter he fled from the state, and accompanied by a copy of an indictment found or by an information supported by affidavit in the state having jurisdiction of the crime, or by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon; or by a copy of a judgment of conviction or of a sentence imposed in execution thereof, together with a statement by the executive authority of the demanding state that the person claimed has escaped from confinement or has broken the terms of his bail, probation or parole. The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state; and the copy of indictment, information, affidavit, judgment of conviction or sentence must be authenticated by the executive authority making the demand." [1]

---

[1] In none of these cases is there challenge to the demanding state's allegation of identity or that the person sought was present

Extradition, however, is basically a matter of federal law. Art. IV, sec. 2, cl. 2, of the United States Constitution provides that:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up, to be removed to the state having jurisdiction of the crime."

This constitutional provision has been implemented by Title 18 U.S.C., sec. 3182, which provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. . . ."

Sec. 976.03 (2) of the Uniform Criminal Extradition Act specifically recognizes that the duties of the governor of an asylum state are controlled not only by the Uniform Act itself but by the provisions of the United States Constitution and the acts of Congress enacted in pursuance of art. IV, sec. 2, cl. 2.

in the demanding state at the time of the crime, nor, except as fugitivity is embraced in the concept of probable cause, is fugitive status questioned.

The primacy of federal law in interstate extradition has been repeatedly recognized by this court. *State v. Ritter,* 74 Wis.2d 227, 246 N.W.2d 552 (1976) ; *State ex rel. Foster v. Uttech,* 31 Wis.2d 664, 143 N.W.2d 500 (1966). A state in enacting legislation to implement the United States constitutional mandates may therefore permit extradition under less stringent standards than those mandated by the federal Constitution and federal statutes, but it may not enact or enforce standards in derogation of the federal rights of other states of the Union to obtain the return of persons who have violated their laws and fled from those jurisdictions. State regulations which place burdens or impediments on extradition beyond those permitted by the federal law, whether those regulations be legislatively or judicially imposed, are unconstitutional and void. As stated in *Ex parte Peairs,* 162 Tex. Cr. Rpts. 243, 283 S.W.2d 755 (1955) :

"A state statute on the subject of extradition is unconstitutional only when it seeks to abridge or lessen the duty placed by the Constitution on the part of the chief executive of the asylum state. It follows that any state statute which facilitates the rendition of persons charged with crime is not in conflict with the Federal Constitution and rests rather upon the comity between states and not upon the Federal Constitution." (P. 247)

*See,* also, *Evans v. Rosenberger,* 181 N.W.2d 152 (Iowa 1970).

It is also universally recognized that a governor's extradition warrant is subject to the same constitutional strictures of the Fourth Amendment which govern the issuance of warrants generally.

In *State ex rel. Foster v. Uttech, supra,* we emphasized the constitutional requirement that a governor's rendi-

tion warrant be supported by documents showing probable cause. We pointed out that sec. 976.03(10), Stats., requires that, prior to delivery of an arrested prisoner to an agent of the demanding state, such prisoner be brought before a court and informed of his right to have legal counsel to test the legality of his arrest and to apply for a writ of *habeas corpus*. We held that a governor's arrest warrant could only be legal if it was made upon probable cause as defined in this state by *State ex rel. White v. Simpson*, 28 Wis.2d 590, 137 N.W. 2d 391 (1965). The holding of the United States Court of Appeals one year later was consistent with the rationale of *Foster v. Uttech*. The court said, "There is no reason why the Fourth Amendment, which governs arrests, should not govern extradition arrests." *Kirkland v. Preston*, 385 F.2d 670, 676 (D.C. Cir. 1967).

It is apparent that the arrest which must be justified on the basis of probable cause in the asylum state is the arrest made pursuant to the warrant issued by the governor of the asylum state. The judicial authorities of the asylum state are properly concerned only with the validity of the arrest made within their own jurisdiction. Their concern is in no way directed to the validity of any warrant that may have been issued by the demanding state.[2]

As *Kirkland, supra,* states:

"[T]he terms of 18 U.S.C., sec. 3182, are not met unless the affidavit indicates to the asylum state executive that there is probable cause for believing the ac-

[2] It should be noted that the instant cases are concerned with arrests made on the basis of the Governor's rendition warrant, and do not implicate pre-rendition apprehension and procedures discussed in *State v. Hughes,* 68 Wis.2d 662, 229 N.W.2d 655 (1975).

cused guilty and that *habeas corpus* is the appropriate remedy to test the validity of *his* judgment." (Emphasis supplied.) (P. 677)

Moreover, as this court said in *Foster v. Uttech, supra,* the purpose of requiring copies of the information or affidavit is "to see if the demand or requisition is proper and can serve as a valid basis for a *governor's* rendition warrant." (Emphasis supplied.) (P. 671)

It should be noted that some of the language in *Foster v. Uttech* and *State v. Towne,* 46 Wis.2d 169, 174 N.W. 2d 251 (1970), would appear to indicate that the Wisconsin court focused its attention on the warrant procedures employed in the demanding jurisdiction. To the extent that *Foster v. Uttech* and *State v. Towne* can be so interpreted, we modify their language and conclude that the appropriate issue for a *habeas corpus* court in an extradition proceeding is not whether a warrant was properly issued in the demanding state but whether, given properly authenticated documents, probable cause is stated which justifies the issuance of a governor's warrant in the asylum state.

Whether probable cause is stated for a governor's rendition warrant depends upon the contents of the document denominated as an affidavit and filed with the demand by the governor of the demanding state. It is the obligation of the governor of the asylum state to make a determination of probable cause on the basis of the recital within the four corners of that document; and, hence, a review by a *habeas corpus* court of the governor's decision to issue a warrant is confined to a review of the affidavit *de novo,* with no deference being accorded the governor's conclusions. The review by this court of the *habeas corpus* court is again an examination

*de novo* and involves the determination of whether probable cause is stated in the affidavit accompanying the extradition demand.

When the governor's function and the function of the courts of Wisconsin in reviewing the issuance of the governor's warrant in Wisconsin are analyzed, it is apparent that whether a warrant was issued on a particular affidavit in the demanding state is irrelevant, for it is the complaint or affidavit which must serve the purpose of substantially charging the fugitive with a crime, and not the warrant. *See* 18 U.S.C., sec. 3182. Because, as a matter of right under sec. 976.03(10), Stats., the review of the sufficiency of the affidavit, the charging document, is made *de novo* by the *habeas corpus* court and by this court in review, it is irrelevant whether the governor of the asylum state be a neutral and detached magistrate.[3]

It should be emphasized that this conclusion is based upon established Wisconsin law that, when the evidence to be considered is documentary, a reviewing court is not bound by any inferences that may have been drawn by the factfinder and, therefore, need not afford a trial court's findings any special deference. *McCauley v. Tropic of Cancer,* 20 Wis.2d 134, 148, 121 N.W.2d 545 (1963); *Delap v. Institute of America, Inc.,* 31 Wis.2d 507, 143 N.W.2d 476 (1966); *State v. Haugen,* 52 Wis.2d 791, 191 N.W.2d 12 (1971).

---

[3] Of course, in a non-extradition context, *de novo* review by a *habeas corpus* court would not operate to validate an arrest warrant which was not issued by a neutral and detached magistrate. The crucial distinction in the extradition context is that 18 U.S.C., sec. 3182, makes the executive authority of the asylum state responsible for responding to extradition requests. Therefore, the governor of the asylum state acts pursuant to his role under the controlling federal statute, and the "neutral and detached magistrate" requirement is inapplicable.

Accordingly, the cases cited by the Public Defender, particularly in *Brown,* which hold that special deference should be given to a finding of a trial court are inapplicable to the cases before us, where only documentary evidence is involved. The cases cited by the Public Defender involve credence to be given to oral testimony before a trial court and do not involve determining probable cause on the basis of documentary evidence.

These established appellate rules of review also impel the conclusion that there need be no deference accorded at this stage of the proceedings—post-requisition by the governor of a demanding state—to a finding of probable cause by the demanding state's magistrate. It should be noted, however, that *Hughes, supra,* specifically permits the attribution of *prima facie* validity to an out-of-state warrant for the purpose of taking a fugitive into custody prior to a requisition. *See* sec. 976.03 (13) and (14), Stats. The *Hughes* rationale is, however, inapplicable to the determination of probable cause for the issuance of the governor's rendition warrant in the asylum state.

Because the federal extradition statute, 18 U.S.C., sec. 3182, explicitly makes the affidavit or the indictment of the demanding state the charging document, it is clear that any warrant that may have been issued on either an indictment or the affidavit in the demanding state is mere surplusage.

The Uniform Criminal Extradition Act specifically provides that, where probable cause is based on an affidavit, the demand shall be accompanied "by a copy of an affidavit made before a magistrate there, together with a copy of any warrant which was issued thereon." A reading of this provision leads to the conclusion that an affidavit which in itself demonstrates probable cause is sufficient documentary evidence upon which to base a

rendition warrant. The statute does not require the submission of the out-of-state warrant where no warrant was issued on the affidavit. There is no requirement in the Act that, as a prerequisite to a demand, the affidavit showing probable cause be the affidavit which was used to secure the warrant in the demanding state. The warrant is surplusage and is irrelevant to triggering the asylum governor's right to act.

Were it necessary to file the warrant with the probable-cause affidavit executed before a demanding state's magistrate, the Uniform Criminal Extradition Act would be contrary to 18 U.S.C., sec. 3182, and therefore void, in accordance with the cases cited *supra,* because of the additional burdens imposed by a state on interstate extradition.

The position urged by the Public Defender is contrary to the rationale employed in *Kirkland, supra.* In that case, the Court of Appeals initially found the affidavits submitted insufficient to demonstrate probable cause, but the court held in abeyance its ruling on the rendition warrant until such time as the State of Florida could, if possible, file an additional affidavit demonstrating probable cause. It is apparent from *Kirkland* that the additional affidavit the Court of Appeals would have permitted the Florida authorities to file was a post-Florida-warrant affidavit. The *Kirkland* court clearly was not of the opinion that the affidavit required was to be the same affidavit used to secure the original Florida warrant.

*Kirkland* did not confront the question of whether a state, under the Uniform Criminal Extradition Act, could demand that the warrant be filed. Rather, Judge Wright construed the warrant provision of the Uniform Act as a "request" when he noted his interpretation of the Act, *i.e.,* that it "asks that *if* an arrest warrant is issued it be included in the extradition papers." (Emphasis supplied.) *Kirkland,* n. 12, at 675.

Cases from other jurisdictions have, however, addressed this issue. The Supreme Court of Idaho in the *Application of Williams*, 76 Idaho 173, 279 P.2d 882 (1955), confronted facts strikingly similar to those of *Sieloff*. There a rendition warrant was issued by the asylum state on the basis of an affidavit from the demanding state, but no warrant was submitted from the demanding state. The court concluded that a warrant could not be required under the Uniform Criminal Extradition Act, because federal law controlled and the conflicting uniform law was void. The court said:

"In support of their theory, appellants urge that before a warrant of arrest is issued, a magistrate is required to make some investigation and to exercise some judicial discretion; and that absent the issuance of a warrant, the affidavit of a private person made before a magistrate is not sufficient to charge that the alleged fugitive from justice is wanted for prosecution. Contrary to the contention of appellants, it is the affidavit and not the issuance of a warrant which constitutes the charge against the fugitive. . . . Generally, the issuance of a warrant is not regarded as necessary or material." (P. 176)

The Idaho court relied heavily on *Ex parte Riccardi*, 68 Ariz. 180, 203 P.2d 627 (1949). In the circumstances there, an affidavit but no warrant was submitted by the demanding state. The Arizona court rejected the argument that a warrant could be required under the Uniform Criminal Extradition Act. The court said:

"It is apparent that a failure to present a warrant to the Arizona governor, if true, cannot in any way be considered a fatal defect. . . .

"Under the provisions of the federal law, i.e., section 5278, supra, and the decisions of the United States Supreme Court, a warrant on the indictment or on any other form of criminal charge is not necessary in an

extradition proceeding. It is our opinion that the part of section 44–3606 requiring a warrant on the affidavit requires something not contemplated by the federal law, and is in conflict with section 5278, supra. Therefore that portion of section 44–3606 insofar as it provides 'together with a copy of any warrant which was issued thereon' is in violation of U. S. Revised Statutes, section 5278, 18 U.S.C.A. sec. 662, and is therefore void." (at 188)

*Grant v. Shobe,* 18 Or. App. 188, 524 P2d 550 (1974), held that there need be no judicial determination of probable cause in the demanding state prior to extradition.

It seems clear, therefore, that an asylum state need not concern itself with whether probable cause has been determined in a demanding state. The asylum state's concern is that probable cause be demonstrated to its chief executive by the charging document, the affidavit, which is indeed required. A demanding state's arrest warrant under some circumstances might be relevant where fugitivity is an issue. That question, however, is not posed by any of these cases. The warrant of the demanding state is irrelevant to probable cause.

Turning then to the facts of *Sieloff:* The only defect claimed was the alleged failure to supply the warrant. It is conceded that the affidavit demonstrated probable cause and substantially charged the defendants Sieloff and Janisch with a crime. The order of the county court which quashed the application for a writ of *habeas corpus* must accordingly be affirmed.

We hold, therefore, that when a properly authenticated affidavit is made before a magistrate in the demanding state and that affidavit is found by the governor of the asylum state to substantially charge the crime, *i.e.,* to recite sufficient underlying facts to establish probable

cause for arrest under the strictures of the Constitution, the asylum governor may appropriately issue an extradition warrant. That action is subject to *de novo* review on *habeas corpus*. This state may not require that a warrant based upon that affidavit be submitted. It may only request that, if a warrant was issued, a copy of it be submitted.

The case of *Brown* raises the question of whether the affidavit, which was in the form of a complaint, recited sufficient facts to state probable cause in accordance with requirements of the United States Constitution.

In *Brown,* the extradition warrant was issued, a *habeas corpus* review was demanded in the circuit court for La Crosse county, and the trial judge issued the writ of *habeas corpus,* finding no probable cause. The order granting the writ has been appealed to this court by the State.

As stated above, the appropriate standard of review requires the examination of the complaint in affidavit form, which was submitted to the Governor of Wisconsin by the Governor of Minnesota in his demand for Brown's extradition. A warrant was issued in Minnesota on that affidavit, and that warrant was submitted with the Minnesota Governor's demand. The warrant itself is, however, irrelevant to the determination required to be made by the Wisconsin Governor, the *habeas corpus* court, or this court on review. We are obliged to review the question of probable cause *de novo* to determine, as a matter of law, whether the facts recited in the affidavit show probable cause.

In this state the principal explication of the standards for probable cause appears in *State ex rel. White v. Simpson, supra*. In that case, reliance was placed upon the Fourth Amendment requirements for probable cause as explained in *Jaben v. United States,* 381 U.S. 214 (1965). In *Jaben,* the United States Supreme Court required:

". . . that enough information be presented . . . to make a judgment that the charges are not capricious and are sufficiently supported to justify bringing into play the further steps of the criminal process." (Pp. 224–25)

*White* also relied upon *Giordenello v. United States*, 357 U.S. 480 (1958).

It is clear from these cases and from *White* itself that a demand based upon an affidavit which is conclusionary in nature and fails to identify the source of information is insufficient. *Kirkland, supra,* is an example of a case in which it was held that an affidavit which was framed solely in the language of the state's criminal statute and lacked any identification of sources failed to pass the test of probable cause mandated under the Fourth Amendment to the United States Constitution. The question in the instant case, therefore, is whether the Minnesota affidavit provided sufficient underlying facts to establish probable cause to justify the issuance of a rendition warrant by the Governor of Wisconsin.

In *Brown,* the police officer, Worden, who signed the affidavit stated that he had personally investigated the facts alleged in the complaint—that the victim of the robbery complained to him of the theft from his garage, stated that Brown was an employee at or about the time of the theft, that Brown was present when he stored funds in a closet inside of the garage, and that Brown observed the storing of the funds. The police officer also testified that he spoke to George Koel, who informed him that Brown told Koel that he could easily steal those funds kept in the closet and could then repair his automobile, which had previously been damaged. He also recounted statements of persons who knew that, after the theft of the money, Brown could not be found. It was also verified that Brown, a short time before the theft, had indeed sustained damages to his motor vehicle.

It is clear that the complaint only circumstantially proves probable cause, and in addition the complaint is based upon hearsay. Neither of these facts is, however, fatal to the complaint. Hearsay will be sufficient if it is demonstrated to be reliable. The affidavit indicates that, although the complaining officer based his complaint on hearsay and double hearsay in respect to what the victim had told him and what Koel had told the victim, the complaint nevertheless recites that both of these informants were personally interviewed and they are named in the complaint.

The complainant also investigated the scene of the crime and stated that, in light of the nature of the premises, the burglary was obviously performed by someone familiar with the premises. There were ample facts recited in the complaint to show that Brown was familiar with the premises.

The complainant also verified that Brown's car had been damaged in an accident, and Brown's statement to Koel that he could fix his car with the proceeds of the money in the closet was also confirmed.

The complaint satisfies the standards which this court has set forth in *State ex rel. Evanow v. Seraphim,* 40 Wis.2d 223, 161 N.W.2d 369 (1968). These requirements were capsulized as follows:

"What is the charge? Who is charged? When and where is the offense alleged to have taken place? Why is this particular person being charged? [and] . . . Who says so?" (P. 230)

We conclude that, within the four corners of the complaint which was filed as an extradition affidavit, each of these six requirements is satisfied. Probable cause was shown.

It is argued by the Public Defender that Koel, whose statement is included in the complaint, was not a reliable citizen informer under the criteria established in *State v. Paszek*, 50 Wis.2d 619, 184 N.W.2d 836 (1971). The Public Defender argues that Koel could not qualify as a reliable citizen informer because he neither saw the crime committed nor was he the victim. The rationale of *Paszek* is not, however, so limited. A citizen informer is one who observes the event which he recounts. In this case, Koel's statement recounted personal observations and recollections of his conversation with Brown, during which Brown made inculpatory statements about repairing his car with the proceeds of the possible theft of the funds hidden in the garage.

We conclude, therefore, that the affidavit recited within its four corners sufficient underlying facts to show probable cause. The Governor of Wisconsin properly issued the extradition warrant on the basis of that affidavit. Upon our review of that affidavit, we conclude that the trial judge erred when he found probable cause not stated and ordered the petitioner Brown discharged on *habeas corpus*. The order of the trial court is reversed and the writ quashed.

In the third case, *State ex rel. Bear*, the Public Defender raises two issues: (1) that the Governor of Wisconsin can in no case issue a warrant, because he is not a neutral and detached magistrate; and (2) that the demand of the Texas Governor based upon an indictment was not supported by an affidavit demonstrating probable cause, which the Public Defender asserts is required by the Uniform Criminal Extradition Act. As a subsidiary point, the Public Defender asserts that whatever may be the rule in respect to extraditions based upon indictments generally, a separate affidavit is constitu-

tionally required because grand jury indictments returned in Texas need not be based upon probable cause.

The contention in respect to the neutrality of the Governor or his function as a magistrate has already been sufficiently answered in this opinion. He need not be a neutral and detached magistrate, and whether or not he is trained in the law is irrelevant.

The initial question, therefore, is whether under ordinary circumstances, the production of an authenticated copy of an indictment returned by a grand jury in the demanding state must be accompanied by an affidavit demonstrating probable cause.

Reference should again be made to the controlling federal law, 18 U.S.C., sec. 3182. That portion of the federal statutes requires only:

". . . a copy of an indictment found *or* an affidavit made before a magistrate of any State or Territory charging the person demanded . . . ." (Emphasis supplied.)

It is beyond doubt that the federal statute is in the disjunctive, and no reasonable reading of that statute could lead to the conclusion that both an indictment and an affidavit need be filed with the chief executive of the asylum state.

Moreover, it is well established that, under the Uniform Criminal Extradition Act, where extradition is sought on the basis of an indictment, no affidavit or other supporting document is required. In *State ex rel. Brown v. Telander*, 282 Minn. 209, 211, 163 N.W.2d 858 (1968), the Minnesota Supreme Court said:

"It is clear that these requirements are disjunctive and severable so that a demand is sufficient if it is accompanied by any one of the following: (1) A copy of an indictment, *or* (2) an information supported by affi-

davit, *or* (3) a copy of an affidavit made before a magistrate."

Accord, *Kirkland, supra; People ex rel. de Martini v. McLaughlin,* 243 N.Y. 417, 419, 153 N.E. 853 (1926). *See,* also, Moses, *Interstate Extradition to Answer Criminal Charges,* 9 S. Tex. L. J. 166, 172 (1967).

No provision of either the federal statute or the uniform law requires a probable cause affidavit when the indictment is used as the basis for the extradition. The Public Defender, however, argues that the black letter disjunctives of the two statutes do not control the situation where the indictment is returned in a jurisdiction such as Texas where, it is asserted, a grand jury indictment does not establish probable cause.

The Public Defender is, of course, correct that a number of cases have explained the sufficiency of the indictment as a foundation for extradition proceedings on the ground that implicit in a grand jury's true bill is a finding of probable cause. *See, Kirkland, supra; U. S. ex rel. McCline v. Meyering,* 75 F.2d 716 (7th Cir. 1934); *Eathorne v. Nelson,* 180 Colo. 288, 505 P.2d 1 (1973); *People v. Jackson,* 180 Colo. 135, 502 P.2d 1106 (1972).

It should be pointed out that, even in those jurisdictions in which a grand jury, under the law, is explicitly required to find probable cause, the true bill as returned by the grand jury ordinarily fails to recite the underlying facts on which probable cause is based. It is thus apparent, even in those jurisdictions where a grand jury purports to act only on probable cause, that there is no possibility of a reviewing court making a determination of probable cause. No indictment, from any jurisdiction, which is submitted in the course of a demand for extradition can ever be tested by the asylum state's executive or courts in the manner that an affidavit can be tested. Hence, from the very nature of all indict-

ments, they must be accorded a different treatment under the extradition statutes. Basically, however, the reason why they are accorded different treatment is not because they are based upon probable cause, but because of the nature of the grand jury and its role in our judicial system.

The validity of a grand jury indictment as a basis for extradition has been explained in those terms also. In *People ex rel. de Martini v. McLaughlin, supra,* the court said:

"The finding of an indictment presupposes the testimony of witnesses before a grand jury and is thus a safeguard against a removal that is ignorant or wanton." (P. 419)

Similar reasoning is employed in *People ex rel. Lipshitz v. Bessenger,* 273 App. Div. 19, 75 N.Y. Supp.2d 392 (1947) ; and *Videan v. State,* 68 Ida. 269, 194 P.2d 615 (1948).

A grand jury indictment is sufficient to serve as the basis for a governor's rendition warrant, whether that result is explained on the basis of probable cause or whether explained on the rationale that it follows upon the sworn testimony of witnesses before the grand jury.

Grand jury testimony is ordinarily secret; and at the time a warrant is issued on a true bill, the evidence supporting that true bill is not known to the judge or magistrate who issues the warrant, and it may not be known to the prosecutor. Traditionally, our legal system has accepted the utility and the reasonableness of grand jury secrecy. Usually, an affidavit designed to demonstrate that the grand jury's true bill was based upon probable cause could be made only by a member of the grand jury in violation of his oath of secrecy. Certainly, the demand that the Public Defender makes for an affidavit would vitiate the very purpose of the grand jury.

It is interesting. to note that attack was made in the United States Supreme Court upon the extradition of a defendant from Missouri based on a Texas indictment—the very state whose indictment is questioned in *Bear*. The prisoner there challenged the indictment as being based merely upon the conclusions, the opinion, and the judgment of the grand jury, without any showing of underlying facts. The United States Supreme Court in *Pierce v. Creecy*, 210 U.S. 387, 405 (1908), held:

"[T]he indictment, in order to constitute a sufficient charge of crime to warrant interstate extradition, need show no more than that the accused was substantially charged with crime."

In *U. S. ex rel. Davis v. Behagen*, 436 F.2d 596 (2d Cir. 1970), the United States Court of Appeals for the Second Circuit held, "Neither state nor federal courts in the asylum state may question the existence of probable cause for an indictment."

In *Costello v. United States*, 350 U.S. 359 (1956), not an extradition case, a grand jury indictment was challenged because allegedly it was based solely on hearsay. evidence. The court stated:

"[N]either the Fifth Amendment nor any other constitutional provision prescribes the kind of evidence upon which grand juries must act." (P. 362)

*Costello* quoted with approval the statement in the early case of *United States v. Reed*, 27 Fed. Cas. 727, 738 (1852):

" 'No case has been cited, nor have we been able to find any, furnishing an authority for looking into and revising the judgment of the grand jury upon the evidence, for the purpose of determining whether or not the finding was founded upon sufficient proof.' " *Costello, supra* at 362.

*Costello* further pointed out that to inquire into the evidence upon which a grand jury indictment is based ". . . would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules. Neither justice nor the concept of a fair trial requires such a change." (P. 364)

The *Costello* prohibition on inquiry into the sufficiency of the evidence before a grand jury has been read broadly and has been consistently applied by courts of the United States. *United States v. Ramsey,* 315 F.2d 199 (2d Cir. 1963); *United States v. Cruz,* 478 F.2d 408 (5th Cir. 1973).

A similar rule obtains in Wisconsin. The sufficiency of the evidence before a grand jury is not reviewable. *State v. Lawler,* 221 Wis. 423, 267 N.W. 65 (1936). It is presumed that an indictment is founded on a legally sufficient basis. *State ex rel. Welch v. Waukesha County Circuit Court,* 52 Wis.2d 221, 189 N.W.2d 417 (1971).

We do not find persuasive the Public Defender's argument that indictments returned in the State of Texas should be treated differently from indictments returned elsewhere. True, no Texas statute requires a finding based on probable cause; but for that matter, neither do the Constitutions of the United States, the State of Wisconsin, or the statutes of either of those jurisdictions require a standard of probable cause before a grand jury. The oath taken by Texas grand jurors, Code of Criminal Procedure, 1A Vernon's Texas Annotations, art. 19.34, is almost identical to the grand juror's oath prescribed by sec. 255.11, Stats. Neither requires indictment only on "probable cause."

*State ex rel. Welch, supra,* points out that a grand jury need not be instructed "upon the quality and quantity of proof necessary to support an indictment." (P. 224)

It may well be that grand jury indictments are returned in Wisconsin and in Texas on the basis of something less than could properly and legally be denominated probable cause; but that deficiency, if it be one, stems from the nature of the grand jury. The statements in Wisconsin cases which equate a grand jury indictment with a finding of probable cause appear to reflect hope rather than fact. *See, State v. Lawler, supra.*

It must be recognized that under our legal system a grand jury indictment is *sui generis* and is accorded different treatment from a finding of probable cause made by a magistrate. Except in most unusual circumstances, the true bill rendered by a grand jury can be tested only at trial.

As the Public Defender points out, in Wisconsin a warrant following an indictment must be issued by a judge, but in Texas a capias may be issued by a clerk of court. This is a distinction without a difference, for a Wisconsin judge has no discretion to withhold the issuance of an indictment of a grand jury which is sufficient on its face and which has been returned by a properly constituted grand jury. There is no element of judicial discretion involved in issuing a warrant following an indictment, and that indictment is not subject to a judicial examination of probable cause. *Ex parte United States,* 287 U.S. 241, 249 (1932) ; *Giordenello, supra.*

The meaning of the term, "indictment," is determined not by some abstract legal theory of what ideally the product of a grand jury should be. It varies within some latitude in accordance with the internal procedures of the sovereign states. This was explained in *People ex rel. Marshall v. Moore,* 167 App. Div. 479, 482–83,

153 N.Y. Supp. 10 (1915), *aff'd* 217 N.Y. 632, 112 N.E. 1070:

"The indictment referred to in the Federal statute is not necessarily a common-law indictment, nor yet one under the statutes of the State of New York; it is a statute of the United States, general in its application to all the States, and when it provides that 'whenever the executive . . . demands any person as a fugitive from justice . . . and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory,' it means an indictment found in the due course of procedure in such State or Territory, and this fact is manifest . . . by the certificate of the Governor of the demanding State. The indictment itself, when certified by the Governor, is the only evidence of its authenticity which the law provides for, and an indictment in the sense in which it is used in the Federal statute, is 'a written accusation of one or more persons of a crime or misdemeanor, preferred to and presented upon oath by, a grand jury.' "

We conclude that the meaning of the term, "indictment," as used in that New York case is appropriately applied to the indictment returned by the Texas grand jury. The Texas Code of Criminal Procedure, Vernon's Annotations, art. 21.01, defines a Texas indictment as:

"[T]he written statement of a grand jury accusing a person therein named of some act or omission which, by law, is declared to be an offense."

It would appear, therefore, that the indictment returned by the Texas grand jury fully comports with the indictment contemplated by the federal statute, 18 U.S.C., sec. 3182. The Wisconsin court cannot constitutionally require a different type of indictment than that required by federal law. No inquiry can be made by a Wisconsin governor or by the Wisconsin courts on the question of whether the indictment of another state was in fact returned only after a showing of probable cause to the grand jury. An indictment of a grand jury by its very

nature substantially charges a defendant with a crime, and that is all that is required by the federal statutes or by the Uniform Criminal Extradition Act.

Accordingly, we conclude that the Governor's rendition warrant to return Bear to Texas was appropriately and sufficiently founded upon an authenticated copy of the Texas indictment; and indeed it would have been improper and contrary to controlling federal law to require, or to attempt to require, that there be a revelation, by affidavit or otherwise, of the facts on which the grand jury's indictment was based.

The order of the trial court quashing Bear's writ of *habeas corpus* must be affirmed.

*By the Court.*—No. 75–478, order affirmed; No. 75–512, order reversed; No. 76–321, order affirmed.