John J. Walsh, J.
On June 21, 1963, simultaneous raids were made throughout the State in connection with an alleged lottery operation conducted by the defendants. An indictment charging the defendants with the crime of conspiracy and with the crime of contriving a lottery has been returned by the September 1963 Grand Jury and the trial of such action is about to commence.
The defendant, Anthony Parisi, has moved pursuant to statute for the suppression of certain alleged evidence seized *608 in the Village of Yorkville in this county on the day on which he was arrested. Testimony was adduced from the defendant and the State police officer as to the alleged seizure. The facts adduced upon the hearing, except for slight interpretations of meaning or effect, are uncontroverted. The decision will rest upon a question of law.
The court adopts as unquestionably credible the testimony of State Police Investigator Frank Peo and this decision will be based upon his testimony alone.
As a result, among other things, of certain telephonic interceptions, the State Police obtained from the Utica City Judge a warrant of arrest for the defendant Anthony Parisi. Upon the same affidavits and depositions, they .obtained from a Supreme Court Justice a search warrant covering certain premises occupied by the defendant Parisi.
Early in the morning of June 21, 1963, the police officers entered the home of Parisi, exhibited the warrant of arrest and the search warrant and placed Parisi under arrest. There is no question about when the arrest was made. The State police officer acknowledged the time and place of the arrest. The defendant was taken outside to the police car and other officers proceeded to make the search of the premises. This search produced nothing pertinent to this case.
In the police car, Trooper Peo told the defendant that the authorities knew of the fact that the defendant had been seen with a woman other than his wife and that the defendant ought to co-operate in telling them where the printing press was located. In addition, defendant’s daughter was brought into the discussion. The defendant says that the police officer threatened to send her to a reform school. This is denied by the officer and the court adopts his testimony denying such statement. However, it is clear and undisputed that there was a discussion about the daughter’s possible involvement in the crime gleaned according to the officer from the telephonic interceptions.
As a result of these statements according to defendant and following this discussion according to the police, the defendant directed them to the Village of Yorkville to a printing establishment. This was four or five miles from the scene of the arrest and sometime later.
When they arrived at that location Officer Peo prepared a written form of consent which he contends the defendant signed. Although the defendant did not acknowledge his signature at the hearing', he said it resembled it. The court adopts the *609 testimony of Officer Peo and finds as a fact that the consent was signed by the defendant at that time and place.
It is also clear and undisputed that prior to the signing of the-so-called consent or waiver, that Officer Peo told the defendant that he might as well consent, because another investigator who was not present knew about the location and what was there and the premises would be staked out and a search warrant obtained anyway.
Officer Peo acknowledged that prior to the disclosure by the defendant of the location of the printing plant, the authorities did not know where the treasury tickets were being printed and that the statement that the police knew about the plant was untrue and was made for the purpose of securing the consent.
The defendant then obtained a key from the owner of the property and the officers entered and discovered certain items of alleged evidence.
The defendant was then taken by Officer Peo to the barracks at Oneida while other officers arranged for the removal of the alleged evidence. It is conceded the defendant was not present when the removal was made from the premises. An inventory was apparently given the defendant later.
At the barracks, it is claimed that a statement was taken from the defendant relative to the crimes charged.
The defendant argues that his constitutional rights were violated by the actions of the authorities. It is claimed that the original search warrant for the premises of the defendant was defective since the premises consisted of a two-family house, known to be such and not brought to the attention of the Magistrate nor specifically described in the search warrant (People v. Rainey, 14 N Y 2d 35, revg. 19 A D 2d 696). However, this argument becomes academic since no evidence was discovered at this address. The Court of Appeals held that where a search warrant commands the search of an entire residential building when, as a matter of fact, probable cause exists for the search of but a single residential space located therein, “ The warrant being void in its inception is void for all purposes ” (People v. Rainey, 14 N Y 2d 35, 39, supra). The defendant contends that in the instant case, all subsequent proceedings by the State trooper insofar as this defendant was concerned became illegal.
This court rejects this reasoning. The defendant was properly arrested pursuant to a warrant of arrest displayed to him. If the subsequent search and seizure were unlawful, the illegality stems not from the illegality of the original search warrant but from the constitutional guarantees which surround *610 a defendant formally arrested and charged with the commission of a crime.
The Court of Appeals in People v. Loria (10 N Y 2d 368 [1961]) outlined the three instances in which a search and seizure is constitutionally lawful. ‘1 A search is reasonable if conducted pursuant to a legal search warrant, by consent, or incident to a lawful arrest ” (p. 373).
It is conceded by the People that no search warrant was obtained for the Yorkville premises. Indeed the testimony indicates that except for the defendant’s disclosure after his arrest, no reasonable grounds existed for the issuance of such a warrant.
Nor do the People contend that the search and seizure was “ incident to a lawful arrest.” In Agnello v. United States (269 U. S. 20, 30) the United States Supreme Court held: “ The right without a search warrant contemporaneously to search persons lawfully arrested while committing crime and to search the place where the arrest is made * * * is not to be doubted.”
In the instant case, the search was not contemporaneous with the arrest, nor was it of the person of the defendant nor in his home where the arrest was made.
The People rely solely upon the alleged “consent” signed by the defendant.
A consent to a search is in effect a waiver of the constitutional protection of the Fourth Amendment. But because consent involves a waiver of basic constitutional rights ‘ ‘ ‘ courts indulge every reasonable presumption against waiver ’ of fundamental constitutional rights ” (Johnson v. Zerbst, 304 U. S. 458, 464).
Such consent must be given freely and intelligently, uncontaminated by any duress or coercion actual or implied. It is undenied that there was a discussion between the trooper and the defendant before he signed the waiver about a lawyer to represent him. While there is no evidence that the defendant demanded and was denied the aid of counsel, it is clear that he was told that a lawyer was not necessary and that he might as well sign the waiver because the police could get a search warrant in any event.
The Supreme Court of the United States in Mapp v. Ohio (367 U. S. 343) commanded that each State court enforce the constitutional rights of every defendant in a criminal action by suppressing frbm the evidence on a trial any physical object seized or obtained by the police in violation of such Constitution. The Supreme Court said in effect that only its suppression *611 could ensure those rights; that to allow its introduction into evidence would be to render the solemn words of the Constitution ineffective.
Mr. Justice Clark wrote (p. 660): “ The ignoble shortcut to conviction left open to the State tends to destroy the entire system of constitutional restraints upon which the liberties of the people rest * * *. Our decision, founded on reason and truth, gives to the individual no more than that which the Constitution guarantees him, to the police officer no less than that to which honest law enforcement is entitled, and, to the courts, that judicial integrity so necessary in the true administration of justice.”
In giving effect to this mandate, it has been necessary for trial courts to determine at what point in the investigation of crime, does legitimate and often necessary questioning of a suspect constitutionally end and the privilege against self incrimination become effective insofar as confessions and admissions are concerned?
As case after case reached our appellate courts, the exact point at which even noncoercive questioning of a suspect by the police must cease became more authoritatively established. At first, post-indictment questioning and confessions were held inadmissible; then post-arraignment confessions; then confessions obtained after the appearance of counsel prior to arraignment and after arrest. It has become increasingly clear that to give full effect to the constitutional guarantee, the moment of arrest should be the maximum limit of constitutional questioning in the absence of counsel.
Any doubt that this court might have had on the facts adduced here has been dispelled by the recent decision by the Appellate Division, Fourth Department, in the case of People v. Scmtmyer (20 A D 2d 960). This decision is binding on this court and is determinative of this motion to suppress.
In that case, two brothers were stopped while operating a motor vehicle. Unable to produce a driver’s license, one of the brothers, David, was incarcerated in lieu of the payment of a fine. While he was in jail and his brother, Herman, was apparently at liberty, an information was filed and warrants obtained against both brothers for the unauthorized use of the motor vehicle. When David was released from jail on the first charge, he was immediately arrested on the felony warrant. Between his arrest and his arraignment, David gave two written statements or confessions which implicated his brother Herman. The record does not disclose that David asked the aid of counsel *612 or that the confession was anything other than voluntary and noncoercively obtained.
The conviction of the two brothers was reversed and a new trial was ordered on the ground that the confessions of David were not admissible against either defendant.
Said the court (p. 960): “ There is no logical or valid distinction between a post-arrest statement or confession obtained after filing an information upon which a warrant of arrest is issued and a post-indictment statement or confession obtained after filing an indictment. In each instance a defendant is no longer a suspect but an accused held under court process to await trial and entitled to counsel at every stage of the proceedings.” (Italics added.)
In the case at bar, the police took a written statement from the defendant. This signed statement may not be received in evidence upon the trial on the basis of the Santmyer case.
Having arrested the defendant Parisi on the morning of June 21, it was the statutory duty of the police officer to take him with reasonable speed to be properly booked and thereafter to be arraigned at which time the right of the defendant to the aid of counsel would be declared by the Magistrate.
There is no logical or valid distinction between written confessions and oral confessions. If the one is proscribed, so is the other.
It is abundantly clear that regardless of whatever evidence the police had against the defendant Parisi and it is presumed that such evidence was sufficient to have sustained the issuance of the warrant of arrest, he was induced even if he was not coerced into giving additional information which was incriminatory. That he was constitutionally protected against such disclosure now appears to be clearly established by this recent decision of our appellate courts and is strengthened by the fact in the instant case that there was a conversation about the necessity of the advice of counsel before the so-called waiver was executed and the defendant was advised that it would serve no purpose.
No criticism of the police officer should be gleaned from this decision. He acted in accordance with the established procedure in police investigation and under the belief that until the defendant was actually arraigned before a Magistrate, he was free to act upon any information that he might obtain from the defendant even as a result of noneoercive subterfuge.
But no matter how honestly intended, the constitutional right of the defendant was impaired and the motion to suppress must be granted.