GAUTREAUX, Plaintiff in error, v. STATE, Defendant in error.

*No. State 94. Argued September 14, 1971.—Decided October 8, 1971.*
(Also reported in 190 N. W. 2d 542.)

For the plaintiff in error there was a brief by *Donald E. Mayew* and *Phillips, Richards & Mayew,* all of Kenosha, and oral argument by *Donald E. Mayew.*

For the defendant in error there was a brief by *Robert W. Warren,* attorney general, and *William F.*

*Eich,* assistant attorney general; the cause was argued by *Richard J. Boyd,* assistant attorney general.

HALLOWS, C. J.  Gautreaux challenges his convictions on the following grounds: (1) The physical evidence admitted at the trial was obtained by an illegal search of an automobile, and (2) the evidence is insufficient to support a finding of guilty.

The basic facts are not in dispute. Early in the morning of October 30, 1968, Mr. and Mrs. Arthur Garcia, owners of Art & Joyce's Tavern in Kenosha, were awakened in their two-story apartment by sounds in their tavern below. Mr. Garcia saw six people running from the back door of the tavern—two entered a car parked across the street and the others disappeared on foot. Mrs. Garcia, looking out a west window, saw the car pull away. She testified there were several occupants. Both Mr. and Mrs. Garcia describe the persons as "colored," the car as an old black Pontiac with a head lamp on the driver's side out and the red lens on the left-rear taillight gone so the taillight showed white. Upon examining their tavern, they found the back door had been broken open, the cash register emptied and a "party jar" containing coins was missing. The police, who were called to the scene, noticed the lock on the back door had been broken and pry marks on the door.

The police broadcast the description of the car and the occupants as given by the Garcias and a police squad car on Sheridan Road, not far from the tavern, stopped a black 1958 Pontiac with a left-rear taillight lens gone and a front headlight burned out. The car was occupied by eight black males, one of whom was Gautreaux. They were taken to Art & Joyce's Tavern where the Garcias identified the car; the eight men were placed under arrest and taken to the station.

It was subsequently learned the Gallo Pharmacy in Kenosha had been also burglarized that night and several watches and some coins were missing. At the station Joe Charleston, the driver and owner of the car, after twice refusing to allow a search, finally signed a consent permitting the police to search the car. Prior thereto the police had told Charleston they could not search the car without his consent, that he would be better off if he consented to a search of the car and if nothing were found in the car all defendants could return to their homes in Illinois and the day shift of detectives would continue the investigation.

The search of the car turned up a pry bar and a hacksaw in the trunk; two pocket watches, another pry bar and a screwdriver under the back seat; a glove containing coins and brown paper bags (one containing coins and the other containing several watches) between the radiator and the grill. These items constituted the state's exhibits at the trial which were admitted in evidence.

It is argued by Gautreaux that when the consent was given at the police station Charleston, along with the defendant and others, were under arrest and this alone is sufficient to establish the consent was not voluntary but rather the product of coercion and duress implied from the fact the defendants were subject to the control of the officers. Although the state has the burden of proving by clear and positive evidence the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied, *Holt v. State* (1962), 17 Wis. 2d 468, 117 N. W. 2d 626; *United States v. Callahan* (2d Cir. 1971), 439 Fed. 2d 852; *United States v. Berkowitz* (1st Cir. 1970), 429 Fed. 2d 921, and its burden is more difficult when the consent is given while the consenter is under arrest, *United States v. Page* (9th Cir. 1962), 302 Fed. 2d 81; *United States v. Jordan* (2d Cir. 1968), 399 Fed. 2d 610, there is no presumption a consent to

a search given by a person under arrest is involuntary and coerced as a matter of law.

It is true the psychological effect of being in the custody of the police should be taken into consideration and be given greater weight with first offenders than with experienced criminals. Likewise, the time of day or night, the deprivation of human comforts, the number of policemen interrogating the person are among the factors to be considered in evaluating whether the consent was voluntary. However, the factors used in the evaluation do not differ essentially from those considered in determining voluntariness of an inculpatory statement or confession. In terms of involuntariness and the freedom of choice, we see no legal difference. *See Barnes v. State* (1964), 25 Wis. 2d 116, 130 N. W. 2d 264 (same principles apply to search of a home and search of a person). We think that even though the consent was given early in the morning while Charleston was in custody and after he twice refused to give the consent, these factors are not sufficient standing alone to render the consent involuntary in fact. Many courts have found a consent to be voluntarily given despite its "in custody" nature. *Judd v. United States* (D. C. Cir. 1951), 190 Fed. 2d 649; *see* Annot. (1966), *Validity of Consent to Search Given by One in Custody of Officers,* 9 A. L. R. 3d 858, 873.

But it is argued by Gautreaux the consent was obtained by coercion in that he was told he would be better off with reference to the charge if he consented to the search of the car and this was a veiled threat which implied he would face a more serious charge if he did not consent. We do not consider this statement of the police to contain an implied threat.

It is also argued an officer promised if nothing was found by the search the defendants could return to their homes in Illinois. We do not think this statement is tantamount to a threat or raises the implication that

if Charleston did not let the police search the car they would hold the defendants. While the police cannot use deceit or trickery, they are entitled to make true statements and to interrogate one under arrest. A promise to let one go if a search does not result in incriminating evidence is not the type of promise which would vitiate the consent. The promise might constitute motivation or inducement for making a choice but its nature does not destroy the freedom of choice which is central to the concept of voluntariness.

Gautreaux relies for his argument of involuntariness in a constitutional sense on *People v. Parisi* (1964), 42 Misc. 2d 607, 249 N. Y. Supp. 2d 493, and *United States v. Wallace* (D. C. D. C. 1958), 160 Fed. Supp. 859. In *Parisi* the officer purposely misled the consenter as to the incriminating nature of the goods for which they wanted the search. In *Wallace* the officers searching for lottery printing presses lied to the consenter when they told him they knew the location of the presses and were about to get a search warrant. These cases hold what was psychologically a voluntary choice to be void because of trickery on the part of the police in obtaining the consent. Here, the police stated they intended to release the men if no incriminating evidence was found by the search and the trial court believed this testimony. The cases of *Dade v. State* (1941), 188 Okla. 677, 112 Pac. 2d 1102, and *United States v. Linderman* (E. D. N. Y. 1940), 32 Fed. Supp. 123, are not in point. They involve mere acquiescence or submission to the police rather than that degree of willingness which constitutes a free choice of consent in a constitutional sense.

The trial court found Charleston was aware no search could be conducted without his consent and concluded the consent was not a product of any coercion but rather Charleston chose to take a "calculated risk that the

loot was well hidden and the possibility was the police would not find it by search of the vehicle." Taking a calculated risk is a free choice and the circumstances of this case, especially the location where the loot was hidden, support the court's finding of the voluntariness of the consent and it will not be disturbed.

Gautreaux argues the evidence is insufficient to support both convictions. We disagree and believe a court could by the evidence be convinced of the defendant's guilt beyond a reasonable doubt. While the evidence is circumstantial, it is strong and sufficient to convict. *See State v. Johnson* (1960), 11 Wis. 2d 130, 104 N. W. 2d 379. Here, the Garcias saw several "colored" persons run from the rear of their tavern; they described the color and age of the car, the broken left headlight and the taillight with no red lens. The lock on the tavern door had been broken and the door had pry-bar marks on it. Gautreaux was one of eight black males stopped a short time after the robbery in the vicinity of the tavern in a car which matched the description. The car contained hidden pry bars, hacksaw, screwdriver and money.

While the evidence of the Gallo Pharmacy burglary is not as strong, we think it sufficient. Access to the pharmacy was through the door on which the lock had been pried off. There were pry bars in the car. There was testimony of Mr. Gallo that watches were missing and he identified several of the watches found in the search of the car as being his. Some of these were identified by tags from the store which were still on the watches; others were identified by memory or by their appearance.

In *State v. Johnson, supra,* we pointed out that while mere possession of stolen property raises no inference of guilt, the unexplained possession of recently stolen goods does raise an inference of greater or less weight

depending upon the circumstances, that the possessor is guilty of theft and also of burglary if the goods were stolen in a burglary. Such inference being in the nature of a presumption of fact calls for an explanation of how the possessor obtained the property. Possession of stolen property hidden in a car between the radiator and the grill at 4 o'clock in the morning by eight Illinois men in Wisconsin shortly after similar men in a like car were seen to leave a tavern which was broken into carries great weight. The nature of the possession and of the goods in this case are not of the kind that such property would probably be possessed in that way under lawful ownership.

We think the rule of unexplained possession of recently stolen goods is applicable to this case and with the other facts support the finding of guilt. For further discussion of the rule, see *Winsky v. State* (1905), 126 Wis. 99, 105 N. W. 480; *Montello v. State* (1922), 179 Wis. 170, 190 N. W. 905; *Vejih v. Redford* (1923), 182 Wis. 311, 196 N. W. 228.

*By the Court.*—Judgment affirmed.