*731 ¶ 87.
SHIRLEY S. ABRAHAMSON, J.
0dissent-ing).[1] The legal principle underlying this drunk-driving case is that a blood draw is a search under the Fourth Amendment.[2]
*732 ¶ 88. The lead opinion presents two questions of law that this court decides independently of the circuit court and court of appeals but benefiting from the analyses of those courts.
¶ 89. First, does a driver's "implied consent" under the Wisconsin Implied Consent Law constitute, by itself, voluntary and free consent to a warrantless blood draw for purposes of the Fourth Amendment? See Wis. Stat. § 343.305 (2015-16) (attached).[3]
¶ 90. Second, is the circuit court's finding of consent in fact supported by the record, and, if so, has the State met its burden of proving by clear and convincing evidence that the defendant, Navdeep S. Brar, voluntarily and freely consented to the warrant-less blood draw?
¶ 91. I conclude that the lead opinion errs in deciding both issues.
¶ 92. In responding to the first question, which it need not address, the lead opinion proffers a muddled interpretation of the Implied Consent Law that violates the federal and state constitutional protections against unreasonable searches. The State asserts that the Fourth Amendment is irrelevant to a blood draw undertaken to determine whether the driver is intoxicated.
f 93. The lead opinion and the State engage in an unsound analysis of the text of the Wisconsin Implied Consent Law and relevant case law, including State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 *733 N.W.2d 867, Missouri v. McNeely, 133 S. Ct. 1552 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).
¶ 94. In contrast to the lead opinion's and the State's positions, I conclude that neither a driver's obtaining a Wisconsin operators license nor a driver's operating a motor vehicle in Wisconsin is a manifestation of actual consent to a later search of the driver's person by a blood draw. In order for a law enforcement officer to draw blood from a driver without a warrant, a valid exception to the Fourth Amendment must apply at the time of the blood draw, such as the driver's free and voluntary consent or the existence of exigent circumstances. My position is consistent with recent decisions of other state courts involving implied consent laws and conscious drivers.[4]
*734 ¶ 95. The instant case and the Wisconsin Implied Consent Law should be compared with a very recent (April 2017) Colorado case, People v. Hyde, 393 P.3d 962 (Colo. 2017). Hyde holds that the driver's "statutory consent [under the Colorado statute] satisfied the consent exception to the Fourth Amendment warrant requirement." Hyde, 393 ¶ .3d at 968.
¶ 96. Hyde is based on facts very different from the facts in the instant case. The Colorado Expressed Consent Statute governing Hyde is very different from the Wisconsin Implied Consent Law with regard to the facts of the Hyde case.
¶ 97. The different fact is that the driver in Hyde was unconscious when the blood was drawn.
¶ 98. The difference between the Colorado and Wisconsin laws is that with regard to an unconscious driver, the Colorado law provides: "An unconscious driver, on the other hand, 'shall be tested to determine the alcohol or drug content of the person's blood.' [Colo. Rev. Stat.] §42-4-1301.1(8) [2016]. In other words, under the Expressed Consent Statute, the police need not wait until a drunk-driving suspect returns to *735 consciousness, in order to afford that suspect an opportunity to refuse."[5]
¶ 99. In contrast, under Wisconsin's Implied Consent Law, unconscious drivers are "presumed not to have withdrawn consent," but Wisconsin law enforcement officers are not directed to conduct a blood draw on an unconscious driver. The Wisconsin Implied Consent Law (in contrast with the Colorado law) states that a blood draw "may be administered to the [unconscious] person." See Wis. Stat. § 43.305(3)(b) ("[a] person who is unconscious or otherwise not capable of withdrawing consent is presumed not to have withdrawn consent. . . ."). Compare State v. Howes, 2017 WI 18, 373 Wis. 2d 468, 893 N.W.2d 812 (lead opinion) (upholding a warrantless blood draw of an unconscious driver based on exigent circumstances rather than the Implied Consent Law).
f 100. In addition to these factual and statutory differences, Hyde is unavailing because Hyde's reasoning relies on unpersuasive readings of Missouri v. McNeely, 133 S. Ct. 1552 (2013), and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016).
¶ 101. Indeed, Hyde has already been rejected by one state supreme court. In North Carolina v. Romano, No. 199PA16, 2017 WL 2492782 (N.C. June 9, 2017), the North Carolina Supreme Court was faced with the question whether drawing blood from an unconscious *736 driver on the basis of only the implied consent law, without a warrant or exigent circumstances, and violated the Fourth Amendment.
f 102. The Romano court analyzed Hyde, McNeely and Birchfield. It disagreed with the Hyde court. It declared the blood draw unconstitutional: "Treating [the unconscious driver provision of the implied consent law] as an irrevocable rule of implied consent does not comport with the consent exception to the warrant requirement because such treatment does not require an analysis of the voluntariness of consent based on the totality of the circumstances."[6] The Romano court interprets McNeely and Birchfield substantially the same as I do and as do other state courts.
¶ 103. In responding to the second question, I conclude the lead opinion again errs. The circuit court's finding of consent in fact is not supported by the record, and even if it is, the State has failed to meet its burden of proving by clear and convincing evidence that the defendant voluntarily and freely consented to the warrantless blood draw in the instant case.
¶ 104. Because the lead opinion errs as a matter of law and whittles away constitutional protections for the defendant and all of us, I dissent.
! — 1
¶ 105. The lead opinion interprets the Wisconsin Implied Consent Law to mean that driving in Wiscon *737 sin amounts to voluntary and free consent to a blood draw. According to the lead opinion, the statutory "implied consent" given previously equates to actual consent at the time of the blood draw. In the lead opinion's view, the Implied Consent Law, standi rig alone, provides "consent sufficient under the Fourth Amendment — not some amorphous, lesser form of consent." Lead op., ¶ 21.
¶ 106. The lead opinion concludes: "Brar consented [to the blood draw] under Wisconsin's implied consent law. He availed himself of the roads of Wisconsin, and as a result, he consented through his conduct to a blood draw." Lead op., ¶ 29.
¶ 107. The lead opinion recognizes, however, that conscious drivers are statutorily given an opportunity to withdraw consent, lead op., ¶ 23 n.ll, but does not address whether an opportunity to withdraw consent must always be given before a blood draw is taken. Lead op., f 23 n.10.[7] Oddly, and inconsistently with the rest of its analysis, the lead opinion also recognizes that "[e]ven in implied consent cases, we consider the totality of the circumstances at the time of the blood *738 draw to determine if an individual's previously-given consent continues to be voluntary at that time." Lead op., ¶ 25 (emphasis added).
¶ 108. The State takes a position similar to the lead opinion's. The State asserts that the Fourth Amendment is irrelevant to a blood test requested under the Implied Consent Law. The State argues that when a driver is stopped and is read the Informing the Accused Form, which the legislature requires a law enforcement officer to read verbatim to a driver, the State is not soliciting Fourth Amendment consent to a blood draw.[8] The State's position is that the question at the Form stage is not whether the driver consents to the test, "but rather whether the subject will submit to the test he previously agreed to take, or recant his consent and face the adverse consequences of a refusal."[9]
¶ 109. According to the State, when a driver is stopped and a law enforcement officer employs the Implied Consent Law to take a warrantless blood draw, the Fourth Amendment is not involved:
This is not Fourth Amendment consent terrain; it is the statutory world of implied consent, a world the subject has entered though his own behavior. The injection of Fourth Amendment consent principles into the Form phase of the implied consent statute contradicts Wisconsin and U.S. Supreme Court cases dealing *739 with the law and would severely undermine the statute's critical role in combating the national problem of drunken driving.[10]
f 110. The State contends that Fourth Amendment constitutional rights come into play at the Informing the Accused stage only after the driver refuses to allow a blood draw and the State seeks a warrant for the blood draw or asserts that a Fourth Amendment exception applies, such as exigent circumstances.
¶ 111. I disagree with the interpretations of the Informed Consent Law proffered by the lead opinion and the State.
¶ 112. The lead opinion's and the State's interpretation of the Implied Consent law contravenes the text of the Law. By its plain terms, the Law does not treat the driver as having actually consented to a blood draw. By its plain terms, the Law does not empower law enforcement officers to draw a blood sample when the vehicle is stopped. Rather, the Law directs a law enforcement officer to inform the driver that a request is being made for a test, that the driver may refuse to take the test, and that the driver will face civil legal consequences upon refusal to take the test.
f 113. The text of the Informing the Accused Form, which the Law requires to be read to the driver verbatim, advises the driver that he or she may refuse to give a blood sample but that a refusal has consequences, including revocation of operating privileges and use of evidence of the refusal against the driver in court. Wis. Stat. § 343.305(4). If the Implied Consent Law furnishes actual consent to a blood draw, why would the legislature require officers to inform drivers *740 when they are stopped that the officer is requesting a test and that the driver may refuse the requested test?
f 114. I conclude that in the context of the Wisconsin Implied Consent Law, the conduct that equates to consent valid under the United States and Wisconsin constitutions is the driver's agreeing to submit to the test after being read the Informing the Accused Form. Were it otherwise, there would be no need to read the Form or request a test.
f 115. I conclude that the court of appeals interpreted the Implied Consent Law correctly in State v. Padley, 2014 WI App 65, 354 Wis. 2d 545, 849 N.W.2d 867: The "implied consent" given by drivers on Wisconsin highways pursuant to the Implied Consent Law does not equate to "actual consent" under the Fourth Amendment. Padley, 354 Wis. 2d 545, ¶¶ 38-39.
¶ 116. The Padley court concluded that a driver's actual consent occurs after the driver has heard the Informing the Accused Form, weighed his or her options (including the refusal penalties), and decided whether to give or decline actual consent. Padley, 354 Wis. 2d 545, ¶ 39. The Implied Consent Law gives a driver a choice whether to give or decline to give actual consent when confronted with a request by a law enforcement officer for a blood draw:
[T]he implied consent law is explicitly designed to allow the driver, and not the police officer, to make the choice as to whether the driver will give or decline to give actual consent to a blood draw when put to the choice between consent or automatic sanctions. Framed in the terms of "implied consent, " choosing the "yes" option affirms the driver's implied consent and constitutes actual consent for the blood draw. Choosing the "no" option acts to withdraw the driver's implied consent and establishes that the driver does not give actual consent. Withdrawing consent by choosing the "no" option is an unlawful action, in that *741 it is penalized by "refusal violation" sanctions, even though it is a choice the driver can make.
Padley, 354 Wis. 2d 545, ¶ 39.
¶ 117. Both the lead opinion and the State suggest that Padley is incorrect as a matter of law, but neither advocates expressly overruling the case.[11] Padley is binding precedent. Wis. Stat. § 752.41. The lead opinion should abide by Padley, overturn it, or distinguish it. Instead, the lead opinion swipes at Padley with clawless paws, unnecessarily leaving Padley and the Implied Consent Law in a state of uncertainty.
*742 ¶ 118. In addition to not adhering to the text of the Wisconsin Implied Consent Law or Padley, the lead opinion does not, in my opinion, pay acute attention to the United States Supreme Court's recent drunk-driving cases.[12]
*743 ¶ 119. The United States Supreme Court has not questioned the constitutionality of implied consent laws imposing civil consequences. Indeed it has confirmed their constitutionality.[13] The United States Supreme Court has not, however, directly decided that the consent exception to the Fourth Amendment is satisfied solely by implied consent under a state implied consent law. The Court also has not explicitly decided that state implied consent laws do not provide actual consent satisfying the Fourth Amendment. In my opinion, this latter proposition is implicit in the Court's recent drunk-driving cases. As Professor La-Fave has observed: "Consent in any meaningful sense cannot be said to exist merely because a person (a) knows that an official intrusion into his privacy is contemplated if he does a certain thing, and then (b) proceeds to do that thing."[14]
¶ 120. In Missouri v. McNeely, 133 S. Ct. 1552 (2013) and Birchfield v. North Dakota, 136 S. Ct. 2160 (2016), the Court did not expressly address the issue of implied consent stemming from implied consent laws. But the Court's reasoning derived from Schmerber v. California, 384 U.S. 757 (1966), is directly applicable to the issue of consent.
*744 ¶ 121. In McNeely, 133 S. Ct. at 1566, the driver refused to consent to a blood draw. The Court recognized that valid Fourth Amendment consent had to be obtained before blood was validly drawn under the Fourth Amendment, unless an exception other than consent was in play.
¶ 122. The McNeely court (in a plurality opinion) explained: "Whether a warrantless blood test of a drunk-driving suspect is reasonable must be determined case by case based on the totality of the circumstances." McNeely, 133 S. Ct. at 1563.[15] This emphasis on totality of circumstances suggests a broader reading of McNeely than limiting McNeely to exigent circumstances.
f 123. Shortly after the McNeely decision, the United States Supreme Court vacated a Texas judgment upholding a forced blood draw based solely on consent derived from the Texas implied consent statute and remanded the matter to the state court for further consideration in light oí McNeely. Aviles v. Texas, 134 S. Ct. 902, 902 (2014), vacating 385 S.W.3d 110 (Tex. Ct. App. 2012). Aviles suggests that McNeely should be read broadly to apply to all warrantless blood draws and that the Texas implied consent statute was not a per se exception to the Fourth Amendment justifying warrant-less blood draws. The Texas court so interpreted the United States Supreme Court decision on remand.[16]
*745 ¶ 124. Birchfield echoes McNeely and Aviles. The Birchfield Court noted that "[o]ur prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and eviden-tiary consequences on motorists who refuse to comply." Birchfield, 136 S. Ct. at 2185. The Court characterized implied consent laws as laws "to induce motorists to submit to BAC testing." 136 S. Ct. at 2180. The Birchfield Court explained that implied consent laws "provide!] that cooperation with BAC testing [is] a condition of the privilege of driving on state roads and that the privilege [will] be rescinded if a suspected drunk driver refuse[s] to honor that condition." Birchfield, 136 S. Ct. at 2169.
¶ 125. One of the petitioners in Birchfield, Michael Beylund, complied with a law enforcement officer's demand for a blood sample under North Dakota's implied consent law, which imposed criminal penalties on a driver for refusal to submit to a blood test,[17] Birchfield, 136 S. Ct. at 2172. Although Beylund submitted to the blood draw, the Birchfield court did not rely on "implied consent" derived from the implied consent law or acquiescence to uphold the constitutionality of the blood draw. Rather, the Court remanded the case to the North Dakota state court to determine whether Beylund's submission to the blood draw under *746 the totality of the circumstances was voluntary consent to the search under the Fourth Amendment when he was erroneously told that the law required his submission to the blood draw and that the State could compel a blood test. Birchfield, 136 S. Ct. at 2186.
f 126. Considering the text of the Wisconsin Implied Consent Law, Padley, the United States Supreme Court language in McNeely and Birchfield, the remand of Aviles, and the required totality of circumstances analysis to determine voluntary consent (which I discuss further below), I conclude that neither a Wisconsin driver's license nor the operation of a motor vehicle in Wisconsin is a manifestation of actual consent to a later search of the driver's person by means of a blood draw. To draw blood without a warrant or an exception to the Fourth Amendment, the driver's valid consent under the Fourth Amendment must be obtained at the time of the blood draw.
II
¶ 127. Whether the defendant consented in fact to the blood draw and whether the consent was voluntarily and freely given under the Fourth Amendment and the Wisconsin constitution are questions of law that this court decides independently.
¶ 128. I disagree with the lead opinion's analyses and conclusions of law.
f 129. Consent in fact is a question of historical fact. This court will uphold a circuit court's finding of fact "if it is not contrary to the great weight and clear preponderance of the evidence." State v. Artic, 2010 WI *747 83, ¶ 30, 327 Wis. 2d 392, 786 N.W.2d 430.[18] This court, however, independently applies constitutional principles to these facts.[19]
¶ 130. In the instant case, the record includes an audiovisual recording of the exchange during which the defendant's alleged consent took place. Just as when a case and its factual issues are contained solely in written, documentary evidence, I can independently analyze the audiovisual evidence and need not give special deference to the circuit court's findings regarding factual issues, such as consent in fact.[20]
*748 ¶ 131. The audiovisual recording undermines the circuit court's finding of consent in fact and the lead opinion's discussion. The defendant did utter the words "of course," but they are associated with his comment that "I don't want my license to be taken. This is a complicated question."
¶ 132. Although the lead opinion finds that "[n]othing in the recording rebuts the officer's testimony as to Brar's statements," lead op., f 33, the audiovisual recording does conflict with the officer's testimony describing the "of course" comment. The lead opinion's affirmation of consent in fact based on the recording is rebutted by the audiovisual recording. The recording does not support the finding that the defendant consented in fact.
¶ 133. Rather, the audiovisual recording suggests, in my opinion, that the defendant was "stalling" to avoid taking the test. The law enforcement officer *749 should have treated the defendant's conduct as a refusal to allow the blood test.[21]
f 134. In sum, based upon the audiovisual recording, I conclude that the defendant did not consent in fact to the blood draw.
f 135. Even if the defendant consented in fact, the question becomes whether the consent was freely and voluntarily given, that is, whether the consent was constitutionally valid.
¶ 136. The lead opinion delves into what constitutes voluntary consent, attempting to redefine the Fourth Amendment consent standard. The lead opinion withdraws "any language ... [in the cases] that requires that consent to a search be given knowingly and intelligently." Lead op., ¶ 27. Thus, the lead opinion overrules a number of unnamed cases, including Gautreaux v. State, 52 Wis. 2d 489, 492, 190 N.W.2d 542 (1971), a longstanding precedent.
f 137. More than forty years ago in Gautreaux, the Wisconsin Supreme Court stated the following regarding a defendant's consent to a constitutionally protected search: " [T]he state has the burden of proving by clear and positive evidence the search was the result of a free, intelligent, unequivocal and specific consent. . . ." Gautreaux v. State, 52 Wis. 2d 489, 492, *750 190 N.W.2d 542 (1971) (emphasis added).[22] Gautreaux has not been overruled.
¶ 138. Why does the lead opinion attempt to overrule Gautreaux now? Because, according to the lead opinion, "we interpret our constitution consistent with the Fourth Amendment," and the United States Supreme Court has said that "[n]othing, either in the purposes behind requiring a 'knowing' and 'intelligent' waiver of trial rights, or in the practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures." Lead op., ¶¶ 19 n.8, 27 (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973)).
¶ 139. This reasoning is unsound. First, this court need not (and does not always) interpret Article I, Section 11 of the Wisconsin Constitution in tandem with the Fourth Amendment to the United States Constitution. See, e.g., State v. Dubose, 2005 WI 126, ¶ 41, 285 Wis. 2d 143, 699 N.W.2d 582; State v. Eason, 2001 WI 98, ¶ 60, 245 Wis. 2d 206, 629 N.W.2d 625.
f 140. Second, it seems to me that the substance of the "knowing" and "intelligent" standard, even if not precisely the same as used in the waiver of constitutional trial rights discussed in Schneckloth, 412 U.S. at 141,[23] is implicitly required by the totality of the *751 circumstances test that the United States Supreme Court and this court have adopted to determine the voluntariness of consent under the federal and state constitutions.
f 141. The United States Supreme Court in Schneckloth, upon which the lead opinion relies, recognized that "knowing" and "intelligent" play a role in determining whether valid consent was given under the Fourth Amendment. The Schneckloth Court stated:
The traditional definition of voluntariness we accept today [for Fourth Amendment purposes] has always taken into account evidence of minimal schooling, low intelligence, and the lack of any effective warnings to a person of his rights; and the voluntariness of any statement taken under those conditions has been carefully scrutinized to determine whether it was in fact voluntarily given.
Schneckloth, 412 U.S. at 248.
| 142. The factors listed in the Wisconsin cases to be considered in determining voluntary consent under the Fourth Amendment and the Wisconsin Constitution are similar and also imply that a defendant's consent must be knowing and intelligent. See State v. Artic, 2010 WI 83, ¶¶ 28-33, 327 Wis. 2d 392, 786 N.W.2d 430.
¶ 143. The Artie case sets forth the following non-exclusive list of factors to be considered in the totality of the circumstances to determine whether consent was freely and voluntarily given:
*752 (1) whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent; (2) whether the police threatened or physically intimidated the defendant or "punished" him by the deprivation of something like food or sleep; (3) whether the conditions attending the request to search were congenial, non-threatening, and cooperative, or the opposite; (4) how the defendant responded to the request to search; (5) what characteristics the defendant had as to age, intelligence, education, physical and emotional condition, and prior experience with the police; and (6) whether the police informed the defendant that he could refuse consent.
State v. Artic, 2010 WI 83, ¶ 33, 327 Wis. 2d 392, 786 N.W.2d 430 (citing State v. Phillips, 218 Wis. 2d 180, 198-203, 577 N.W.2d 794 (1998) (emphasis added).
¶ 144. Indeed, the statement in Padley 354 Wis. 2d 545, ¶ 64, that consent requires a showing that a "search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied" seems to be a shorthand form for the factors that this court has set forth in Artie.[24]
f 145. With regard to the defendant's consent in the instant case, it was obtained by the officer's giving the defendant misinformation, namely that the officer did not need a warrant to draw blood.[25] Advising the *753 defendant, through words or conduct, that a warrant was not required for a blood draw was either an express or implied "unlawful assertion of police authority" to take a blood draw without a warrant.[26] Moreover, the first factor identified in Artie, "whether the police used deception, trickery, or misrepresentation in their dialogue with the defendant to persuade him to consent," is pertinent in the instant case.[27]
¶ 146. I conclude that the defendant did not consent in fact and that if he did, the consent was not the result of "an essentially free and unconstrained choice," Schneckloth, 412 U.S. at 225, 227, but merely his acquiescence to an unlawful assertion of police authority. The officer erroneously advised the defendant that blood could be drawn without a warrant. See *754 lead op., ¶ 6. Accordingly, I conclude that the results of the warrantless blood draw should be suppressed.
¶ 147. For the reasons set forth, I dissent.
¶ 148. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Birchfield v. North Dakota, 136 S. Ct. 2160, 2173 (2016); Skinner v. Ry. Labor Execs.' Ass'n, 489 U.S. 602, 616-17 (1989); Schmerber v. California, 384 U.S. 757, 767-68 (1966).

 All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated. The 2015-16 version of § 343.305 is the same as the 2013-14 version.

 See, e.g., State v. Butler, 302 P.3d 609, 613 (Ariz. 2013) (holding that "independent of' the implied consent law, "the Fourth Amendment requires an arrestee's consent to be voluntary to justify a warrantless blood draw."); People v. Mason, 214 Cal. Rptr. 3d 685, 702 (Cal. Super. Ct. 2016) ("To recap, we have concluded that advance 'deemed' consent under the implied consent law cannot be considered actual Fourth Amendment consent."); Flonnory v. State, 109 A.3d 1060, 1065 (Del. 2015) ("Here, the trial court erred when it concluded that 'Defendant's statutory implied consent exempted the blood draw from the warrant requirement.. . .'"); Williams v. State, 771 S.E.2d 373, 377 (Ga. 2015) (collecting cases) ("cases seem to indicate . . . that mere compliance with statutory implied consent requirements does not, per se, equate to actual, and therefore voluntary, consent on the part of the suspect so as to be an exception to the constitutional mandate of a warrant"); State v. Halseth, 339 P.3d 368, 371 (Idaho 2014) ("[W]e hold that an implied consent statute . . . does not justify a warrant-less blood draw from a driver who refuses to consent... or objects to the blood draw .... Consent to a search must be voluntary."); State v. Wulff, 337 P.3d 575, 581 (Idaho 2014) (same); Byars v. State, 336 P.3d 939, 946 (Nev. 2014) ("The *734 implied consent provision . . . does not allow a driver to withdraw consent, thus a driver's so-called consent cannot be considered voluntary. Accordingly, we conclude that [the implied consent provision] is unconstitutional."); State v. Fierro, 853 N.W.2d 235, 243 (S.D. 2014) (ruling that a Fourth Amendment totality of the circumstances analysis must be performed to determine whether consent to a blood draw taken pursuant to state implied consent law was voluntary); Aviles v. State, 443 S.W.3d 291, 294 (Tex. Ct. App. 2014) (holding that implied consent and blood draw statutes are not permissible exceptions to the warrant requirement and stating that to hold otherwise "flies in the face of McNeely's repeated mandate that courts must consider the totality of the circumstances of each case").

 People v. Hyde, 393 P.3d 962, 966 (Colo. 2017).
With regard to a conscious driver the Colorado Expressed Consent Statute is, according to the Colorado Supreme Court, similar in language and effect to implied consent laws in other states with regard to conscious drivers, even though the statute is phrased in terms of expressed consent. Hyde, 393 P.3d at 966 n.1.

 North Carolina v. Romano, No. 199PA16, 2017 WL 2492782, at *8 (N.C. June 9, 2017).
The Romano court cites cases from two other states agreeing with its conclusion that the statutory implied consent does not satisfy the consent exception to the Fourth Amendment with regard to an unconscious driver. See State v. Havatone, 389 P.3d 1251, 1253, 1255 (Ariz. 2017); Bailey v. State, 790 S.E.2d 98, 103 & n.42 (Ga. App. 2016).

 The law is clear, in my opinion, that inherent in the requirement of voluntary consent is the right of a person to withdraw consent. See, e.g., United States v. Dyer, 784 F.2d 812, 816 (7th Cir. 1986) ("a person may limit or withdraw his [or her] consent to a search, and the police must honor such limitations."); Burton v. United States, 657 A.2d 741, 746 (D.C. 1994) (citing Florida v. Jimeno, 500 U.S. 248, 252 (1991) and Dyer to conclude: "We think these authorities compel the conclusion that when the basis for a warrantless search is consent, consent may be withdrawn any time prior to completion of the search, and we so hold."); 4 Wayne R. LaFave et al., Search & Seizure: A Treatise on the Fourth Amendment § 8.1(c) at 58 (5th ed. 2012) ("consent usually may be withdrawn or limited at any time prior to the completion of the search") (footnotes omitted).

 The State notes that, under its interpretation of the Implied Consent Law, whether consent to the blood draw is deemed to occur when a driver applies for an operating license or when a driver operates a vehicle is not material. In either case, says the State, the driver has given consent to the blood draw under the Implied Consent Law before the driver is pulled over on suspicion of drunk driving.

 Brief of Plaintiff-Respondent (State) at 7.

 Brief of Plaintiff-Respondent (State) at 8-9.

 The defendant asserts that the State has forfeited the issues whether the Fourth Amendment applies to the "Form" stage of implied consent cases and whether Padley was wrongly decided. The defendant argues that at no point in this litigation did the State assert this position until its brief in this court. See Reply Brief of Defendant-Appellant-Petitioner at 4; Wis. Stat. § (Rule) 809.62; State v. Denny, 2017 WI 17, ¶ 117, 373 Wis. 2d 390, 891 N.W.2d 144 (Abrahamson, J., dissenting); Michael Heffernan, Appellate Practice and Procedure in Wisconsin § 23.8 (7th ed. 2016) ("Failure to raise an issue in the petition for review is deemed a waiver of any claim that the supreme court should consider the issue.").
In the court of appeals, the State took the position that Padley was correctly decided by relying on it. See Plaintiff-Respondent's (State of Wisconsin) Court of Appeals Brief at 3 (" 'Consent' is not to be confused with Wisconsin's 'implied consent' statute, a law which gives law enforcement the authority to require drivers to choose between consenting to a blood draw or refusing and facing penalties enacted by the legislature.") (citing Padley, 354 Wis. 2d 545, ¶¶ 27, 33).
In this court, the State asserts that Padley's view of the Implied Consent Law is not correct and that when the Implied Consent Law is in play, it "is not Fourth Amendment consent terrain; it is the statutory world of implied consent, a world the subject has entered through his own behavior." Brief of Plaintiff-Respondent (State of Wisconsin) at 8.

 The lead opinion's reliance on pre-McNeely and pre-Birchfield Wisconsin drunk-driving cases (such as State v. Neitzel, 95 Wis. 2d 191, 289 N.W.2d 828 (1980), and State v. Piddington, 2001 WI 24, 241 Wis. 2d 754, 623 N.W.2d 528), is dubious for several reasons.
Recent United States Supreme Court cases significantly changed the constitutional landscape of drunk-driving. See State v. Tullberg, 2014 WI 134, ¶ 42, 359 Wis. 2d 421, 857 N.W.2d 120, cert. denied, 135 S. Ct. 2327 (2015) (McNeely "changed the landscape of warrantless blood draws in Wisconsin . . . .").
The statutes at issue in those cases are not the same as the statute involved in this instant case, and the lead opinion fails to explain why these cases should control its analysis.
The language from these cases upon which the lead opinion relies is taken out of context.
The issue addressed in Neitzel was whether the accused had a right to confer with counsel before deciding to take or refuse to take a chemical test for intoxication. The court held that Neitzel did not have the right to confer with counsel. The issue in the case did not involve implied consent as such.
In Piddington, the issue was whether the accused, who was profoundly deaf since birth, fully understood the information he was given orally by the law enforcement officer pursuant to the Implied Consent Law. The circuit court ruled that the State had not met its burden to show that the accused understood the information he was given. The supreme court ruled that whether the accused actually comprehended the warnings is not a required part of the inquiry. According to the supreme court, the test is whether the law enforcement officer's attempts to communicate with the accused were reasonable under all of the circumstances. The court did not address whether the accused voluntarily and freely consented to a blood draw.

 See Missouri v. McNeely, 133 S. Ct. 1552, 1566 (2013) ("States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk-driving offense."); Birchfield v. North Dakota, 136 S. Ct. 2160, 2185 (2016) ("Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and eviden-tiary consequences on motorists who refuse to comply . .. and nothing we say here should be read to cast doubt on them.").

 4 Wayne R. LaFave et al., Search & Seizure: A Treatise on the Fourth Amendment, § 8.2(1) at 164-65 (5th ed. 2012).

 The Supreme Court of Georgia has explained: "To hold that the legislature could nonetheless pass laws stating that a person 'impliedly' consents to searches under certain circumstances where a search would otherwise be unlawful would be to condone an unconstitutional bypassing of the Fourth Amendment." Cooper v. State, 587 S.E.2d 605, 612 (Ga. 2003) (quoting Hannoy v. State, 789 N.E.2d 977, 987 (Ind. App. 2003)).

 Aviles v. State, 443 S.W.3d 291, 294 (Tex. Ct. App. 2014) (holding that implied consent and blood draw statutes are not *745 permissible exceptions to the warrant requirement and stating that to hold otherwise "flies in the face of McNeely's repeated mandate that courts must consider the totality of the circumstances of each case").

 The Birchfield Court noted that "[t]here must be some limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads," and "conclude [d] that motorists cannot be deemed to have consented to submit to a blood test on pain of committing a criminal offense." Birchfield, 136 S. Ct. at 2185-86.

 State v. Robinson, 2010 WI 80, ¶ 22, 327 Wis. 2d 302, 786 N.W.2d 463 ("When presented with a question of constitutional fact, this court engages in a two-step inquiry. First, we review the circuit court's findings of historical fact under a deferential standard, upholding them unless they are clearly erroneous. Second, we independently apply constitutional principles to those facts.") (internal citations omitted).

 State v. Post, 2007 WI 60, ¶ 8, 301 Wis. 2d 1, 733 N.W.2d 634 (citing State v. Martwick, 2000 WI 5, ¶ 16, 231 Wis. 2d 801, 604 N.W.2d 552).

 In such circumstances, the trial court's factual findings do not carry the same weight because the "trial court's customary opportunity to evaluate the demeanor and thus the credibility of the witnesses . . . plays only a restricted role .... " Pullman-Standard v. Swint, 456 U.S. 273, 301-02 (1982) (Marshall, J., dissenting) (quoting United States v. Gen. Motors Corp., 384 U.S. 127, 141 (1966) and citing Jennings v. Gen. Med. Corp., 604 F.2d 1300, 1305 (10th Cir. 1979)); Hague v. Liberty Mut. Ins. Co., 571 F.2d 262, 264 (5th Cir. 1978) ("Because the case was submitted to the district court in the form of documents and transcripts, [the] burden of showing that the district court's findings of fact were 'clearly erroneous' is somewhat lessened.").
Accord Lambrecht v. Estate of Kaczmarczyk, 2001 WI 25, ¶ 27, 241 Wis. 2d 804, 623 N.W.2d 751 ("This court and the circuit court are equally able to read the written record."); State ex rel. Sieloff v. Golz, 80 Wis. 2d 225, 241, 258 N.W.2d 700 *748 (1977) (same); Vogt, Inc. v. Int'l Bhd. of Teamsters, 270 Wis. 315, 71 N.W.2d 359 (1955), on reargument, 270 Wis. 321b, 321i, 74 N.W.2d 749 (1956) ("[The reason for the clearly erroneous standard is that the] appellate court must give weight to the findings of a trial court made in a contested matter upon oral testimony where the trial judge is in a position to pass on the credibility of the witnesses and the weight to be given to their testimony. He has full opportunity to observe the demeanor of the witnesses and judge their veracity- — the appellate court does not. The reason for the rule disappears, however, when the appeal is presented upon no more than pleadings and affidavits, as is the case here."); Cohn v. Town of Randall, 2001 WI App 176, ¶ 7, 247 Wis. 2d 118, 633 N.W.2d 674 ("We are in just as good a position as the trial court to make factual inferences based on documentary evidence and we need not defer to the trial court's findings."); Racine Educ. Ass'n v. Bd. of Educ., 145 Wis. 2d 518, 521, 427 N.W.2d 414 (Ct. App. 1988) (same); Pfeifer v. World Serv. Life Ins. Co., 121 Wis. 2d 567, 571 n.1, 360 N.W.2d 65 (Ct. App. 1984) (same).

 See State v. Rydeski, 214 Wis. 2d 101, 107, 571 N.W.2d 417 (Ct. App. 1997) (driver's conduct in insisting on using the restroom after agreeing to take the test in order to stall qualified as a "refusal"); Village of Elkhart Lake v. Borzyskowski, 123 Wis. 2d 185, 191, 366 N.W.2d 506 (Ct. App. 1985) (driver who, while not verbally refusing to take breathalyzer test, engaged in conduct which effectively prevented officer from obtaining accurate breath sample refused to take the test).

 Citing Holt v. State, 17 Wis. 2d 468, 117 N.W.2d 626 (1962); United States v. Callahan, 439 F.2d 852 (2d Cir. 1971); United States v. Berkowitz, 429 F.2d 921 (1st Cir. 1970).

 In Schneckloth v. Bustamonte, 412 U.S. 218, 241 (1973), the United States Supreme Court declared:
There is a vast difference between those rights that protect a fair criminal trial and the rights guaranteed under the Fourth Amendment. Nothing, either in the purposes of behind requiring a "knowing" and "intelligent" waiver of trial rights, or in the *751 practical application of such a requirement suggests that it ought to be extended to the constitutional guarantee against unreasonable searches and seizures.

 State v. Padley, 354 Wis. 2d 545, ¶ 64 (quoting State v. Johnson, 177 Wis. 2d 224, 233, 501 N.W.2d 876 (Wis. Ct. App. 1993) (quoting Gautreaux, 52 Wis. 2d at 492)); accord State v. Giebel, 2006 WI App 239, ¶ 18, 297 Wis. 2d 446, 724 N.W.2d 402 ("Orderly submission to law enforcement officers who, in effect, incorrectly represent that they have the authority to search and seize property, is not knowing, intelligent and voluntary consent under the Fourth Amendment.'') (Emphasis added.).

 See State v. Giebel, 2006 WI App 239, ¶ 18, 297 Wis. 2d 446, 724 N.W.2d 402 (citing United States v. Elliot, 210 F. *753 Supp. 357, 360 (D. Mass. 1962) ("Orderly submission to law enforcement officers who, in effect, incorrectly represent that they have authority to search and seize property is not knowing, intelligent and voluntary consent under the Fourth Amendment.").

 State v. Johnson, 2007 WI 32, ¶ 16, 299 Wis. 2d 675, 729 N.W.2d 182 (citing Johnson v. United States, 333 U.S. 10, 12-13 (1948); United States v. Morales, 171 F.3d 978, 982-83 (5th Cir. 1999); United States v. Pena-Saiz, 161 F.3d 1175, 1177 (8th Cir. 1998); United States v. Baro, 15 F.3d 563, 566-67 (6th Cir. 1994); State v. Wuest, 190 Wis. 251, 255, 208 N.W. 899 (1926); State v. Johnson, 177 Wis. 2d 224, 228, 234, 501 N.W.2d 876 (Ct. App. 1993)).

 State v. Artic, 2010 WI 83, ¶ 33, 327 Wis. 2d 392, 786 N.W.2d 430. See also Bumper v. North Carolina, 391 U.S. 543, 548 (1968); State v. Rodgers, 119 Wis. 2d 102, 349 N.W.2d 453 (1984) ("Acquiescence to an unlawful assertion of police authority is not equivalent to consent.").
See also Birchfield, 136 S. Ct. at 2187 (remanding Bey-lund's case to the state courts to determine whether submission to a blood draw after the arresting officer erroneously advised the accused that he was subject to criminal penalties if he refused to allow the blood draw).